ZACHARY W. CARTER
Corporation Counsel, City of New York
Attorney for City of New York
Of Counsel: Hugh H. Shull III (HS-0236)
100 Church Street, Room 5-233
New York, New York 10007
(212) 356-2138

Hearing Date and Time:
June 1, 2016
10:30 a.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                                  Case No.  16-41426-nhl

207 AINSLIE, LLC,                                            Chapter 11

                              Debtor.
-------------------------------------------------------X

## NOTICE OF MOTION OF THE CITY OF NEW YORK FOR (I) DISMISSAL OF THE DEBTOR'S BANKRUPTCY CASE, OR, IN THE ALTERNATIVE, (II) STAY RELIEF

**PLEASE TAKE NOTICE** that upon the annexed motion of the City of New York (the "City") dated April 26, 2016 (the Motion"), the City, by its counsel, Zachary Carter, Corporation Counsel of the City of New York, by Hugh H. Shull III, Assistant Corporation Counsel, shall move this court before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201-1800, in her courtroom, on June 1, 2016 at 10:30 a.m., or as soon thereafter as counsel may be heard, for an order: i) dismissing the debtor's bankruptcy case pursuant to 11 U.S.C. §1112, or ii) granting the City relief from the automatic stay pursuant to 11 U.S.C. §362(d) to allow the City to proceed with litigation against the Debtor with respect to property located at 207-217 Ainslie Street, Brooklyn, New York.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion and the relief requested therein must be set forth in a writing describing the basis therefore and filed with the Bankruptcy Court on its electronic filing system, and received by Judge Lord's

chambers and by the undersigned not later than seven (7) days prior to the hearing date.  Unless

answering papers are received by that time, the Motion may be deemed unopposed and granted

without a hearing.

Dated:        New York, New York
              April 26, 2016

                              Corporation Counsel of the City of New York
                              Attorney for The City of New York

                              By:  /s/ Hugh Shull
                                   Hugh H. Shull III (HS-0236)
                                   New York City Law Dep't.
                                   100 Church Street, Rm 5-233
                                   New York, NY 10007
                                   hshull@law.nyc.gov

ZACHARY W. CARTER
Corporation Counsel, City of New York
Attorney for City of New York
Of Counsel: Hugh H. Shull III (HS-0236)
100 Church Street, Room 5-233
New York, New York 10007
(212) 356-2138

Hearing Date and Time:
June 1, 2016
10:30 a.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In re:

207 AINSLIE, LLC,

                Debtor.
-----------------------------------------------------X

Case No.  16-41426-nhl

Chapter 11

## MOTION OF THE CITY OF NEW YORK FOR (I) DISMISSAL OR, ALTERNATIVELY (II) RELIEF FROM THE AUTOMATIC STAY

The City of New York (the "City"), by its attorney ZACHARY W. CARTER,
Corporation Counsel of the City of New York, as and for its motion for (i) dismissal of the
Debtor's bankruptcy case, or, alternatively, (ii) stay relief under § 362(d) of the Bankruptcy
Code, respectfully states:

**I. Preliminary Statement**

    1.    The Debtor's petition should be dismissed as a bad faith filing.  The
Debtor is merely forum shopping in what is in essence a two-party dispute regarding the City's
option to purchase real property at 207-217 Ainslie, Street, Brooklyn, New York (the "Property")
from its proper owner, Ainslie Street LLC (the "Owner").  The alleged sale of the Property to the
Debtor violated the City's right of first refusal under its lease with the Owner.  The Debtor filed
its bankruptcy petition on the eve of final oral argument in State Court litigation between the
parties for a determination of the City's motion for summary judgment for a declaration, *inter
alia*, that (i) the City has a right to exercise an option to buy the Property and (ii) upon tender of
the exercise price the alleged deed to the Debtor is null and void and of no legal effect.

2.     As shall be set forth more fully below, the City was party to a lease with the Owner of the Property, and had been a party to leases with prior owners dating back to 1971. For over forty (40) years, Conselyea Street Block Association, Inc. ("Conselyea") has operated a senior center and child day care center at the Property under separate arrangements with the City. It has been a neighborhood fixture with long ties to the Property as occupant and remains in possession providing senior and day care services to the community.

3.     The City entered into a lease for the Property with the Owner in 1996 (the "Lease") which was to be for a period of twenty (20) years, subject to a right of early termination. The Lease contained a right of first refusal to purchase the Property, which required the Owner to notify the City of any *bona fide* offer to purchase the Property that the Owner wished to accept, and gave the City ninety (90) days from receiving that notice to decide whether to purchase the Property on those same terms. The City terminated the Lease effective as of October 31, 2013. However, well before then, in March 2013, the Owner entered into a contract of sale to sell the Property for $4.5 million, but failed to notify the City as required under the Lease.

4.     The Owner and Debtor closed on the sale of the Property in November 27, 2013 and filed a real property transfer tax report with the City Register stating that the transfer was for $4.5 million pursuant to a Contract of Sale dated March 1, 2013. Thus, the Owner clearly had received an offer that it wished to, and in fact did, accept during the term of the Lease, which caused the City's right of first refusal to ripen into a purchase option. However, the City wasn't notified of the offer, thus depriving the City of an opportunity to exercise its right of first refusal to which it was entitled under the Lease.

5.      The Debtor, after purchasing the Property, commenced a holdover proceeding in Civil Court against Conselyea, which continues to occupy the Property. The Civil Court set use and occupancy at $40,000 a month, plus tax and utilities, pending trial, which Conselyea has been paying.

6.      Conselyea commenced an action in State Supreme Court against the Owner, the Debtor and City in which Conselyea contended that it was entitled to exercise the right of first refusal under the Lease. Conselyea sought and obtained a TRO of the Civil Court holdover proceeding, which was marked off calendar. The City filed a cross-claim in the State Supreme Court action asserting that, as the sole tenant under the Lease, it is entitled to exercise the option to purchase the Property and have the deed to the Debtor declared null and void *ab initio*. While nominally on opposing sides, the City and Conselyea have the common goal of having the sale to Debtor voided and for the exercise of the purchase option so that Conselyea can remain as occupant providing senior and day care facilities for the community.

7.      The City moved for summary judgment on its cross-claim. Final arguments on that motion was scheduled for April 4, 2016. On April 1, 2016 the Debtor filed its bankruptcy petition.

8.      It is questionable whether the Property is even an asset of the Debtor's bankruptcy estate, and in fact the City and Conselyea seek to have the deed declared void and of no legal effect. The Debtor was fully aware that the City had a right of first refusal under its Lease with the Owner and in fact agreed in writing at the closing to indemnify the Owner for any claims arising from the City's right of first refusal.

9.      The City, Conselyea and Debtor were in negotiations to settle the State Court litigation up until the time of the Debtor's bankruptcy filing. At a settlement meeting on

Wednesday, March 30, 2016, Conselyea offered to purchase the Property, with partial City funding, for $8,000,000. The Debtor said it needed a day to respond to the offer, and then requested another day. However, rather than respond to the offer, the Debtor filed its bankruptcy petition on Friday, April 1, 2016 and served it late that afternoon. As a result, at the eleventh hour, the Debtor prevented the State Court from determining the City's fully briefed Summary Judgment Motion, which it indicated at the prior court date on March 15, 2016 it was prepared to do upon hearing further argument on April 4, 2016.

10.    Conselyea's offer would provide the Debtor with more than enough to pay its creditors in full. The bankruptcy filing clearly is a sharp litigation tactic taken in response to a good faith, and substantial, offer, and an apparent effort to forum shop and/or to extract even more money to resolve what is essentially a two-party dispute. Therefore, the case should be dismissed as a bad faith filing under clear precedent. Alternatively, stay relief should be granted to allow the State Court proceedings to continue and allow the State Court to rule on the Summary Judgment Motion, and if denied to proceed to trial and final judgment.

11.    A motion under section 1112 of the Bankruptcy Code requires that the Court decide whether to (i) dismiss the case or (ii) convert the case to Chapter 7 liquidation, whichever is in the best interest of creditors and the estate. The City submits that dismissal is in the best interest of creditors. Conselyea has been paying use and occupancy of $40,000[1] a month and expenses pursuant to State Court order during the state court litigation. The State Court is

---

[1] The Debtor's 1007 Statement indicates that it is paying $20,000 a month for overseeing the development of the Property to 437 General Contractors Inc. That equals half the monthly use and occupancy and seems excessive. According to DOS records 437 General Contractors Inc. has a service address of 13 Ralph Boulevard, Monsey, New York, an address believed to be associated with Victor Einhorn, the father of the Debtor's alleged principal. This highlights the fact that the Debtor is not acting in good faith. It could easily be paying its unsecured creditors out of money it is in essence paying to equity.

ready to rule on the Summary Judgment Motion, which will clarify the City's right to acquire title, and even if denied, while that litigation continues the Debtor will continue to be paid. The petition on its face shows that the Debtor is fully able to pay its debts as they come due and is not insolvent. Conversion of the case would merely add another layer of expense and unnecessary complexity to a straightforward real estate dispute. The case should be dismissed as a bad faith filing.

## II. Background

12.     On or about January 18, 1995, the New York City Planning Commission ("CPC") issued a decision in connection with a Uniform Land Use Review Procedure ("ULURP") application by various City agencies, approving the City's lease of the Property for continued use as a daycare center and senior center for a period of up to twenty (20) years, or without time limitation if the Property were to be acquired in fee (the "CPC Decision"). At that time the City had already had a lease for the Property with a prior owner for twenty (20) years, which lease was expiring. Conselyea has operated the Small World Daycare Center and the Swinging Sixties Senior Citizen Center at the Property since 1974 through separate arrangement with the City.

13.     The City Council passed a resolution dated March 21, 1995 approving the CPC Decision.

14.     By bargain and sale deed dated August 16, 1995, Noel Holding Corp. sold the Property to the Owner.

15.     Annexed hereto as Exhibit "A" is a true and correct copy of the relevant portions of Lease between the Owner and the City for the Property, executed by the Owner on December 8, 1995 and by the City on June 26, 1996. Article 27, page 53 of the Lease describes

the City's right of first refusal, whereby if at any time during the term of the Lease the Owner receives any offer it wishes to accept, the Owner must deliver the offer to the City, and the City is given 90 days within which to determine whether it wishes to purchase the Property on the same terms as in the offer.

16.    By letter dated October 19, 2012, the City's Department of Administrative Services ("DCAS") sent a letter to the Owner exercising its right for early termination of the Lease as of midnight, October 31, 2013.

17.    In March of 2013, the Owner and the Gurino Family Partnership entered into a contract of sale for the Property with the Gurino Family Partnership as purchaser for a purchase price of $4.5 million (the "Contract of Sale").  A copy of the Contract of Sale is annexed hereto as Exhibit "B".  The City was never given notice of the offer. The Contract of Sale was entered into prior to the expiration of the Lease.

18.    Annexed together as Exhibit "C" are certified copies of documents recorded together on December 9, 2013, consisting of: (i) a bargain and sale deed for the Property dated November 27, 2013 between the Owner as grantor and the Debtor as grantee (the "Deed"); and (ii) a completed Real Property Transfer Report, dated November 27, 2013 (the "Transfer Report").  The Transfer Report states under penalty for filing a false statement that the Property is being sold for a full sale price of $4,500,000 pursuant to a contract of sale dated March 1, 2013, which clearly refers to the Contract of Sale.[2]

---

[2] By contract of sale dated March 20, 2013 the Gurino Family Partnership and Anthony Gurino agreed to sell the Property to Ainslie Estates LLC ("Ainslie Estates") for a purchase price of $6 million (the "Second Contract"). Thereafter, the Owner, Anthony Gurino and the Gurino Family Partnership and Ainslie Estates entered into a contract dated June 11, 2013 which, among other items, scheduled the closing of the Contract of Sale and Second Contract for November 12, 2013 (the "Third Contract").    The Debtor makes much of the fact that it allegedly paid $7,000,000 for the Property: (i) $4.5 million was paid to the Owner, (ii) $1.5 million was paid to Tahoe Development Corp. at the direction of the Gurino Family Partnership and/or Gurino for their rights, and (iii) $1
Continued…

19.    Annexed hereto as Exhibit "D" is an Indemnification Agreement whereby the Debtor agreed to indemnify and hold the Owner harmless "against any and all claims arising out of" the City's right of first refusal in the Lease. The Debtor was thus aware of the existence of the City's rights under the Lease prior to accepting the Deed.

20.    The Debtor served a Notice of Termination effective as of January 14, 2014 on Conselyea and commenced a holdover proceeding in or around February of 2014 in Civil Court, Kings County, L&T Index Number 56109/2014 (the "Holdover Proceeding"). By order dated July 7, 2014 in the Holdover Proceeding, Conselyea was directed to pay use and occupancy of $40,000 a month to the Debtor and to pay taxes and utilities for the Property pending trial.

21.    By summons and complaint dated November 7, 2014, Conselyea commenced an action in the Supreme Court of the State of New York, Kings County against the Debtor, Owner and City asserting that it had a right of first refusal under the Lease, to compel sale of the Property to it and to enjoin the Holdover Proceeding, bearing the caption Conselyea Street Block Association, Inc. v. 207 Ainslie, LLC, The City of New York, Ainslie Street LLC, Index Number 15873/2014 (the "State Court Action").

22.    A Temporary Restraining Order was issued in the State Court Action on or about November 9, 2014, staying the Holdover Action in Civil Court.

---

million paid to Ainslie Estates LLC for its rights. The only transfer tax paid as indicated by the cover sheet recorded with City Register was for a transfer for $4.5 million. Further, what the Debtor paid to others is not relevant, nor that various contract rights were assigned or flipped. The facts are clear that the offer which the Owner accepted and which it was bound by the Lease to give the City the opportunity to accept was for $4.5 million. Indeed, that was the amount in the Contract of Sale entered into during the term of the Lease, and Debtor concedes was the consideration paid to the Owner.

23.     The City filed a verified answer with cross-claim dated June 5, 2015 (the "City's Answer") in the State Court Action.  The City's Answer asserted a cross-claim that the sale to the Debtor violated its right of first refusal under the Lease and sought declaratory relief that it had a right to exercise a purchase option for the Property, and that upon tender of the purchase price the sale to the Debtor would be null and void.

24.     The Owner filed an answer dated June 18, 2015 which responded only to Conselyea's complaint, but which did not respond to or oppose the City's cross-claim.

25.     The Debtor filed an answer to the City's cross-claim verified on July 16, 2015.

26.     The City filed a Motion for Summary Judgment on December 4, 2015 (the "Summary Judgment Motion").

27.     The Debtor filed opposition to the Summary Judgment Motion dated February 11, 2016.

28.     The City filed a reply affirmation on March 11, 2016.

29.     The State Court heard initial arguments on the Summary Judgment Motion on January 19 and March 15, 2016.  At the urging of the State Court, Conselyea, the City and the Debtor discussed possible settlement of the State Court Action.  At the latter date, the State Court adjourned the case to April 4, 2016 for a settlement conference, and indicated that, if the case did not settle by then, the State Court would hear further arguments that day and determine the Summary Judgment Motion as soon as possible.

30.     The parties met March 30, 2016 and Conselyea offered $8 million for the Property, with partial City funding.  The Debtor requested a day to respond to the offer, then another day.  On Friday, April 1, 2016 (the "Filing Date"), rather than reply to the Conselyea

offer, the Debtor filed for relief under chapter 11 of the Bankruptcy Code. See "In Last Ditch Effort to Oust Brooklyn Senior Center and Daycare, landlord Files for Bankruptcy" *Crain's New York Business*, April 6, 2016, a copy of which is attached as Exhibit "E".

31.    The petition lists mortgage debt of $4.2 million, and unsecured debt of $879,080.00.[3] The Debtor's only asset, aside from a bank account with approximately $2,000, is the Property, which the Debtor asserts has a fair market value of $14 million. The Debtor's List of Equity Security Holder's lists Harry Einhorn as the sole equity holder  The Debtor's Rule 1007 Statement filed with its bankruptcy petition states that it "seeks Chapter 11 relief to clarify and establish that neither Conselyea nor the City has a legitimate and proper right of first refusal, and the Property belongs to the Debtor." See paragraph 7 of the Local Rule Affidavit, Docket No. 1. The State Court, however, was prepared to rule on the City's Summary Judgment Motion, which would determine whether the City has a valid right of first refusal. However, rather than have the State Court clarify this issue after the parties had fully briefed the Summary Judgment Motion and extensively argued the case before the State Court, the Debtor filed a bankruptcy petition at the eleventh hour. This sharp practice strongly suggests that the Debtor is blatantly forum shopping, seeking to extract even more money in settlement despite the $8 million on offer being more than sufficient to pay all creditors in full, or both. This Court should not countenance, or allow itself to be used for, such bald-faced and bad faith conduct.

---

[3] The City does not seek monetary damages, but rather a declaration that would enable it to exercise its purchase option. However, if, arguendo, the Debtor were allowed to sell the Property in bankruptcy for fair-market value, the City would have suffered damages of no less than the sale price minus the amount of the purchase option of $4.5 million. The Debtor would be exposed to liability for tortious interference with the City's rights under the Lease.

### III. Argument

   32. Section 1112(b) of the Bankruptcy Code provides that the court shall dismiss a case, or convert it to one under chapter 7, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment of a chapter 11 trustee or examiner is in the best interest of creditors or the estate. Section 1112(b)(4) provides a non-exclusive list of examples of "cause" to dismiss or convert a chapter 11 case. The City submits that the case should be dismissed for cause as a bad faith filing.

   33. Alternatively, the City requests stay relief under §362(d)(1) for cause. The "bad faith" analysis for stay relief is substantially similar as in the determination of cause for dismissal.

   34. One of the unenumerated factors upon which cause for either dismissal or relief from the stay may be found is "bad faith", see C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership), 113 F.3d 1304, 1313 (2d Cir. 1997). Courts analyze a debtor's bad faith in considering a motion for relief from an automatic stay using the same standards as when a motion to dismiss is filed under 11 U.S.C. § 1112(b). See In re Laguna Associates, L.P., 30 F.3d 734, 737 (6th Cir. 1994). Thus, the analyses under 11 U.S.C. § 1112(b) and 11 U.S.C. § 362(d)(1) are very similar. In re AMC Realty Corp., 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001); In re 234-6 West 22nd Street Corp., 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)(the standards for bad faith as evidence of "cause", whether in the context of dismissal of a Chapter 11 case or relief from the automatic stay "are not substantively different from each other."); In re Setzer, 47 B.R. 340, 344 (Bankr. E.D.N.Y. 1985) ("bad faith has frequently been held to provide sufficient cause to warrant both types of relief").

35.   The Second Circuit in <u>C-TC 9th Ave. Partnership</u> identified the following

factors whose presence may be indicative of a bad faith filing:

(1)   the debtor has only one asset;
(2)   the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
(3)   the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4)   the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
(5)   the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
(6)   the debtor has little or no cash flow;
(7)   the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
(8)   the debtor has no employees.

<u>See</u> <u>C-TC 9th Ave. Partnership</u>, 113 F.3d at 1311; <u>See also</u> <u>AMC Realty Corp.</u>, 270 B.R. at 140

(dismissing Chapter 11 case for cause but also finding cause to lift the automatic stay).

36.   Even the factors discussed in <u>C-TC 9th Avenue Partnership</u> need not all be

present for a finding of bad faith and are not exhaustive, but the court looks to the totality of

circumstances in determining bad faith. "A major factor in the decisions running through much

of the case law justifying dismissals on the basis of bad faith is the fact that the debtor in each

case filed a bankruptcy petition either to escape the consequences of a previous judgment <u>or to</u>

<u>avoid impending proceedings</u>."   <u>In re Blumenberg</u> 263 B.R. 704, 715 (Bankr. E.D.N.Y.

2001)(emphasis added) (case dismissed where debtor admitted he filed bankruptcy to collaterally

attack a state court judgment). As stated in <u>Blumenberg</u>, "[i]t is well-settled law in this circuit

that under section 1112(b) of the Bankruptcy Code, a bankruptcy court may *sua sponte* dismiss

as a bad faith filing a chapter 11 petition filed solely to prosecute a collateral attack of a state

court judgment, where the Debtor has no realistic chance or intention of reorganizing. Blumenberg, 263 B.R. *supra* at 712.    Citing C-TC 9th Ave Partnership, *supra*.

37.    Bad faith has been found where a debtor filed a bankruptcy in another jurisdiction after a prior bankruptcy has been dismissed, as an example of forum shopping. In re Éclair Bakery, Ltd. 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).    Courts may look to the totality of the circumstances in determining whether a filing is in bad faith, and the court may look to "whether the Debtor and its principal have played by the rules; have met their obligations under the Bankruptcy Code; and have 'done equity' when invoking the equitable protections the Bankruptcy Code provides." *Id.*

38.    Numerous cases hold that it is bad faith to file bankruptcy to impede, delay, forum shop or gain a tactical advantage regarding litigation on going in a non-bankruptcy forum, whether that non-bankruptcy forum is a state court or a federal district court. In re Silberkraus 253 B.R. 890, 905 (Bankr. C.D. Cal 2000), citing numerous cases, such as In re SGL Carbon Corp. 200 F.3d 154 (3d Cir. 1999)(bad faith for debtor to file bankruptcy to seek to gain a tactical litigation advantage in pending antitrust litigation), In re Start The Engines, Inc., 219 B.R. 264 (bankruptcy filed to delay state court action), In re Walter 108 B.R. 244 (Bankr. C.D. Cal 1989)(case dismissed for bad faith filing where debtor had sufficient assets to pay all their creditors in full and debtor filed bankruptcy as a substitute for getting a preliminary injunction to stop foreclosure, which had been denied by the state court).

39.    As the court stated in Silberkraus, "[t]he overall teaching of this whole collection of cases is that two party disputes in state court (or federal district court) should be resolved through the normal litigation process in those forums, and it is bad faith to file

bankruptcy instead of continuing with the normal litigation process in the non-bankruptcy forums." <u>Silberkraus</u> 253 B.R. *supra* at 905.

40.    In <u>Silberkraus</u>, a creditor had entered into a lease with the debtor with an option to purchase.    The creditor attempted to exercise the purchase option but the debtor wouldn't close, so the creditor commenced state court proceedings alleging breach of contract and seeking specific performance.  The state court scheduled a status conference for the purpose of scheduling a trial.  Two days before the scheduled state court status conference, the debtor filed for bankruptcy. <u>Silberkraus</u>, 253 B.R. *supra* at 897-898.

41.    The creditor moved for summary judgment, and the bankruptcy court granted stay relief, ruling that the pivotal issue in the creditor's specific performance action, whether it "had a valid and enforceable option to purchase the debtor's property for $3.95 million, is a state law contract issue; and ruled that the state court is the most appropriate forum to determine such state law issues." *Id.*    A debtor's rights with respect to property are determined in accordance with applicable state and local law.  <u>See</u> <u>Butner v. United States</u>, 440 U.S. 48, 55, 59 L.Ed.2d 136, 99 S. Ct. 914 (1979) (absent federal law to the contrary, a debtor's property rights are defined by state law and are not altered by a bankruptcy filing).

42.    The Court noted in granting stay relief "that it is inappropriate to allow the Debtor to forum shop – to seek to have the bankruptcy court determine the validity of the option to purchase, instead of the state court – via the mechanism of filing bankruptcy.  The state court law suit – which would have decided that issue – was already in progress at the time the bankruptcy was filed.  Bankruptcy was not necessary to get a determination regarding the validity and enforceability of the option to purchase." <u>Silberkraus</u>, *supra* at 898.

43.    As in <u>Silberkraus</u>, herein, the Debtor filed its bankruptcy petition during state court proceedings regarding a purchase option in a lease.  In <u>Silberkraus</u>, the state court was within two days of holding a status conference to schedule a trial on the creditor's right to specific performance.  In the case at hand, the state court has indicated that it is ready to rule on the City's Motion for Summary Judgment.  The Debtor's Rule 1007 Statement states that it "seeks Chapter 11 relief to clarify and establish that neither Conselyea nor the City has a legitimate and proper right of first refusal, and the Property belongs to the Debtor."  Par. 7, Local Rule Affidavit, Docket No. 1.  If the state court had ruled in the City's favor, it would have made it quite clear that the City has a valid right of first refusal.  Rather than seek to clarify this issue, the Debtor is blatantly forum shopping.

44.    The debtor in <u>Silberkraus</u> later proposed a plan and disclosure statement providing for a rejection of the lease with the option to purchase.  The creditor objected to the disclosure statement based on the fact that the bankruptcy court had already lifted the stay to allow the state court specific performance action to continue, and, that the plan was premised on the debtor rejecting the contract and allowing it to sell for fair market value over and above the purchase option price, contrary to the Bankruptcy Code.  The disclosure statement was not approved.

45.    The creditor moved to dismiss or convert the case as a bad faith filing. Among the reasons proffered was the fact that the timing of the petition, two days prior to a status conference to set a trial date in state court, coupled with the fact the debtor was solvent, established bad faith.  Further, the debtor failed to act as a fiduciary because the dispute with the creditor caused a conflict (the debtor could pay all creditors in full even if the creditor were permitted to exercise the purchase option).  The court converted the case to a chapter 7

liquidation, indicating that a trustee might settle the state court action for an amount sufficient to pay creditors, whereas the debtor "had no incentive to settle unless the price was high enough to pay all creditors plus return funds to the debtor." Silberkraus, 253 B.R. *supra* at 901.

46.     Similarly, in the case at hand, the Debtor filed on the last business day before the State Court was prepared to hear final arguments on the Summary Judgment Motion and mark it fully submitted and ready for determination.   The Debtor filed for bankruptcy allegedly to clarify the purchase option issue even though the State Court is the appropriate forum and it is ready to rule.   Even if summary judgment were to be denied, the State Court Action would then go to trial, the same procedural posture of the purchase option litigation in Silberkraus, where stay relief was granted.   Further, the $8 million purchase offer, if accepted, would settle the State Court Action, was and would be more than enough to satisfy Debtor's creditors, just as in Silberkraus, where the exercise of the purchase option would enable creditors to be paid in full.   The Debtor is not interested in acting as a fiduciary to its creditors but in lining its principal's own pockets.

47.     The creditor in Silberkraus next filed a motion for sanctions, on the basis that the petition was filed in bad faith.   A finding of a lack of good faith depends on the totality of circumstances surrounding the case.   Silberkraus, *supra*, 902. All the facts and circumstances leading up to the filing, and the conduct of the debtor during a case, may be considered in determining whether a chapter 11 case is subject to conversion or dismissal for cause for bad faith, or the lack of "good faith" required pursuant to 1129(a)(3) of the Bankruptcy Code for the court to be able to confirm a plan.   *Id.*

48.     The Silberkraus court found the debtor had filed in bad faith.   It filed for bankruptcy, even though it was solvent, to obstruct, delay and stay the ongoing pending state

specific performance litigation. It was "forum shopping to try to have the bankruptcy court, rather than the state court, determine the validity and enforceability of the option to purchase…" *Id*. The court found the situation analogous to <u>In re Chinichian</u>, 784 F.2d 1440 (9th Cir. 1986), where the 9th Circuit upheld the rejection by the bankruptcy court of a chapter 13 plan as having been filed in bad faith solely to avoid state court specific performance litigation.   As in <u>Chinichian</u>, in <u>Silberkraus</u> the Chapter 11 debtor was solvent and merely forum shopping to avoid state court litigation of the specific performance issue.

49.     In <u>Silberkraus</u> the debtor itself had entered into a lease as landlord with an option to purchase with the creditor/tenant.  It tried to reject the contract but was not allowed to do so.  Here, the Debtor had no lease with the City and thus cannot reject the Lease and purchase option.  Instead, the Debtor purported to purchase the Property, knowing full well that the Lease contained a right of first refusal, and indemnified the Owner from any claims arising from the right of first refusal.  If, arguendo, it is allowed to sell the property in bankruptcy it would liable for damages for intentional tortious interference with the City's contract rights.

50.     Bankruptcy Code section 365(i) provides that if the trustee (or a debtor-in-possession with the rights and duties of a trustee) rejects an executory contract for the sale of real property under which the purchaser is in possession, the purchaser has the option of treating the contract as terminated or of remaining in possession, and the trustee must then deliver title to such purchaser in accordance with the provisions of the contract of sale.  If the party in possession accepts rejection of the contract, or if the purchaser is not in possession, then the purchaser has a lien on the Property in the amount of the any of the purchase price paid.  Section 365(i) is designed to protect buyers in possession.  <u>Id</u>.  The buyer in possession does not have to

be in possession under any particular type of contract. In re Maier, 127 B.R. 325 (Bankr. W.D.N.Y. 1991).

51.    In the case at hand, the Debtor cannot reject the Lease, because it is not a party thereto. In Silberkraus the court indicated that the debtor would be unable to reject the lease and purchase option (which therein had ripened into a contract of sale by the creditor's tender) under section 365(i) of the Bankruptcy Code to defeat the creditor's right to specific performance, but that even if it could, the rejection damages would prevent equity from receiving any substantial gain from rejection. "The damages caused by that rejection (assuming the option to purchase was valid and enforceable) would have been, at minimum, the difference between the option price and the fair market value of the property on the date the bankruptcy was filed…That measure of damages would not take into account the value of the right to specific performance, i.e., right to possess/obtain title to the commercial property." In re Silberkraus 253 B.R. supra at 907-908.  The debtor could not even confirm a plan because rejection of the creditor's purchase option would create such a large claim a plan could not be confirmed over its objection.  Moreover, the creditor would be entitled to most of the surplus value created and equity would achieve nothing.

52.    Similarly, herein, the City seeks to enforce its contractual rights under the Lease to exercise its purchase option.  In essence it seeks specific performance of its rights.  If the Court were to allow the Debtor to simply sell the Property on the open market to the highest bidder, the City would have a damage claim of at least the difference between the amount of the purchase option, $4.5 million, and the amount of the sale price.  The Debtor alleges that the Property is worth $14 million.  Assuming arguendo that a sale would achieve such a price, the City's damages would be no less than $9.5 million (plus punitive damages), based, among other

claims, tortious interference. See <u>R.U.M.C. Realty Corp. v J.C.F. Associates, LLC</u> 859 N.Y.S.2d 465 (NY 2nd Dept 2008)(a triable issue of fact exists as to whether plaintiff could establish that defendant tortiuously interfered with plaintiff's contract with landlord by intentionally procuring breach of plaintiff's right of first refusal under lease; defendant had purchased property after surrender of lease, but contract of sale was entered into prior to surrender).

53.     There's no doubt that the Debtor was aware of the City's right of first refusal.  It intentionally procured the Owner's breach of the agreement.  While it was not the original purchaser under the Contract of Sale, it was in effect assignee of the rights and obligations thereunder and by consummating the sale it made the breach tangible.

54.     The City is not seeking damages.  It wants to exercise its purchase option so that Conselyea can remain in possession.  However, even if the Debtor could do what it claims to want to do, equity would recover nothing.  If it could sell in bankruptcy for $14 million, it would have to satisfy a mortgage claim of $4.2 million.  That would leave $9.8 million (assuming for argument's sake a sale would be net of costs), to be shared by approximately $880,000 in unsecured debt listed in the petition, plus the City's potential claim for $9.5 million, for a total of $10,380.00 million.  Equity could recover nothing under the absolute priority rule.

55.     Simply put, the Debtor is in the exact same position as the debtor in <u>Silberkraus</u>, which was found to have filed in bad faith.  The Debtor's bad faith is made even more manifest by the fact it rejected the offer of $8 million, which is more than sufficient to pay its creditors in full and more than it paid for the Property when it intentionally procured breach of the City's contract rights.  It is also paying half the gross income, or $20,000 per month, to a company evidently in common control with equity.  The Debtor is clearly in no need of

bankruptcy protection and filed in bad faith to avoid the State Court Action and enforcement of the City's rights.

56.    Based on the foregoing, the City submits the case should be dismissed for cause as a bad faith filing.  The case was filed for the improper purpose of impeding the State Court Action. The City submits dismissal is preferable to conversion to avoid the added layer of expense of appointing a trustee.  Alternatively the City seeks stay relief to allow the State Court Action to proceed to final judgment.

Dated:    New York, New York
        April 26, 2016

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the
                                        City of New York
                                    Attorney for the City of New York
                                    100 Church Street, Room 5-233
                                    New York, New York 10007
                                    (212) 356-2138

                            By:    /s/ Hugh Shull
                                    Hugh H. Shull III (HS-0236)
                                    Assistant Corporation Counsel