UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CONSELYEA STREET BLOCK ASSOCIATION, INC.,          __ CV __

                                        Plaintiff

                        v.

207 AINSLIE, LLC, THE CITY OF NEW YORK, and
AINSLIE STREET LLC,

                                        Defendants.
------------------------------------------------------------------------x

### NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK FOR AUTOMATIC REFERENCE TO THE U.S. BANKRUPTCY COURT

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK:

Pursuant to 28 U.S.C. §§ 1334, 1446, 1452 and Bankruptcy Rule 9027, 207 Ainslie, LLC (the "Debtor") hereby removes the above captioned action now pending in the Supreme Court of the State of New York, County of Kings entitled: Conselyea Street Block Association, Inc. v. 207 Ainslie, LLC, the City of New York and Ainslie Street LLC, Index No.: 15873/2014 to the United States District Court for the Eastern District of New York, for automatic reference to the United States Bankruptcy Court for the Eastern District of New York, to be heard by the Hon. Nancy Hershey Lord in connection with the Chapter 11 proceedings of 207 Ainslie LLC (Case No. 16-41426 (NHL)).

Dated: New York, New York
      April 19, 2016

                         GOLDBERG WEPRIN FINKEL
                         GOLDSTEIN LLP
                         Proposed Attorneys for the Debtor
                         1501 Broadway – 22nd Floor
                         New York, New York 10036
                         (212) 221-5700

              By:        _____
                         Kevin J. Nash, Esq.

TO:    Brooklyn Legal Services Corporation
        Attorneys for Plaintiff
        260 Broadway, Suite 2
        Brooklyn, New York 11211
        Attn: Martin S. Needelman, Esq.

        Marc Aronson, Esq.
        Attorney for Plaintiff
        107 Smith Street
        Brooklyn, New York, NY 11201

        New York City Law Department
        Office of Corporation Counsel
        100 Church Street
        New York, New York 10007
        Attn: Todd A. Krichmar, Esq.

        Sidrane & Schwartz-Sidrane LLP
        Attorneys for 207 Ainslie, LLC
        119 N. Park Avenue, Suite 201
        Rockville Centre, New York 11570
        Attn: Steve Sidrane, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
CONSELYEA STREET BLOCK ASSOCIATION, INC.,

                                     Plaintiff                 __ CV __

              v.

207 AINSLIE, LLC, THE CITY OF NEW YORK, and
AINSLIE STREET LLC,

                                     Defendants.
-----------------------------------------------------------------------x

## DECLARATION IN SUPPORT OF REMOVAL

STATE OF NEW YORK     )
                            ) ss.:
COUNTY OF NEW YORK   )

        Kevin J. Nash declares the following under penalties of perjury, pursuant to 28 U.S.C.

§ 1746:

        1.     I am a member of the law firm of Goldberg Weprin Finkel Goldstein LLP,

proposed bankruptcy counsel to 207 Ainslie LLC (the "Debtor").

        2.     I respectfully submit this Declaration in support of removal of the Action

(defined below) to be heard in connection with the Debtor's pending Chapter 11 case pursuant to 28

U.S.C. §§ 1334, 1446, 1452 and Bankruptcy Rule 9027.

        3.     Specifically, on April 1, 2016, the Debtor filed a voluntary Chapter 11 petition

in the United States Bankruptcy Court for the Eastern District of New York before the Hon. Nancy

Hershey Lord (Case No. 16-41426).

        4.     At the time of the Chapter 11 filing, the Debtor was a party to a certain action,

previously pending in the Supreme Court of the State of New York, County of Kings (the "State

Court"), entitled: Conselyea Street Block Association, Inc. v. 207 Ainslie, LLC, the City of New York and Ainslie Street LLC, Index No.: 15873/2014 (the "Action").

5.    The Action directly and materially impacts the Debtor's continuing ownership of its real property located at 207-217 Ainslie Street, Brooklyn, New York (the "Property"). The Property constitutes the Debtor's primary asset and is currently subject to competing claim by two separate parties (Conselyea Street Block Association and the City of New York) asserting a superior interest in the Property based upon a disputed right of first refusal. The Debtor contends that it obtained a contract to purchase the Property after the lease containing the right of first refusal terminated. The Debtor filed its Chapter 11 petition to deal with competing claims to the Property while it proceeds with a redevelopment project, which is now put in grave jeopardy by the Action.

6.    Given the fact that the Debtor's continuing right to ownership and, *inter alia*, possession of the Property is under assault, the Action constitutes a core proceeding because it involves resolution of claims or counterclaims by or against the Debtor (28 U.S.C. §157(b)(2)(C)); directly implicates the use and sale of property belonging to the Debtor's bankruptcy estate (28 U.S.C. §157(b)(2)(M) and (N)); and involves the liquidation of assets of the estate and adjustment of debtor-creditor relationships under 28 U.S.C. §157(b)(2)(O).

7.    In view of the foregoing, Debtor hereby removes the Action to the District Court for automatic referral to the Bankruptcy Court.

8.    Copies of relevant pleadings are annexed hereto, identified as follows:

Exhibit "A" -    Complaint filed by Plaintiff

Exhibit "B" -    Answer filed by the Debtor

Exhibit "C" -    Answer and Cross-Claims filed by the City

Exhibit "D" -    Answer to Cross-Claims filed by the Debtor

Dated:      New York, New York
               April 19, 2016

                           GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
                           Attorneys for HS 45 John LLC
                           1501 Broadway – 22nd Floor
                           New York, New York 10036
                           (212) 221-5700

                    By:                              
                              Kevin J. Nash, Esq.

x:\gwfg\new data\yen\word\einhorn - 207 ainslie\notice of removal 04-19-16 v3.doc

# EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------x

CONSELYEA STREET BLOCK ASSOCIATION, INC
                          Plaintiff,

                                                      **Verified Complaint**

          -against-
207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET LLC

                          **Defendants.**

-------------------------------------------------------------------x

SIRS/MADAM:

**PLEASE TAKE NOTICE**  that the Plaintiff, by their attorney, **Marc Aronson,**

as and for their verified complaint in the within matter respectfully sets forth as follows:

1- At all times hereinafter mentioned, this Plaintiff is a Corporation, duly

Incorporated in the State of New York, County of Kings was and still is doing business in

the City and State of New York, County of Kings.

2- At all times hereinafter mentioned, on information and belief, the Defendants

are in State of New York, as follows:

> 207 Ainslie, LLC
> Sidrane & Schwartz-Sidrane, LLP,
> 1427 Sturl Avenue,
> Hewlett. NY 11557
>
> Ainslie Street LLC
> 451 Bell Street, West Hempstead, NY 11552
>
> The City of New York,
> The Law Department
> 1 Centre Street, 17[th] Floor
> New York, NY 10007-2601

## AS AND FOR A FIRST CAUSE OF ACTION

3- The Plaintiff has been the tenant at the subject premises since 1971, the inception of the subject premises. That heretofore and on June 28, 1996, the Agreement of Lease was entered into for a period of twenty (20) years for the subject premises.

4- That subsequent thereto, Plaintiff duly took up occupancy in said premises and has maintained continuous occupancy and possession of said premises ever since, pursuant to lease, and has continued to pay the rent each and every month.

5- That pursuant to the subject lease, the landlord, Ainslie Street, LLC, was required to provide the tenant the Right of First Refusal to purchase the subject premises. This is pursuant to Article 27 of the Lease.

6- The Defendant Ainslie Street, LLC, improperly sold the premises to 207 Ainslie, LLC without providing the Plaintiff with the Right of First Refusal as required by Article 27 of the Lease.

7- That the Plaintiff therefore demands that this court issue a permanent injunction compelling the defendant to sell the subject premises to Defendant, and staying Defendant from any proceeding for possession against the Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

8- That there is a real and justifiable controversy with respect to whether the Defendant may refuse to sell the subject premises to Plaintiff.

9- That the Plaintiff requires and request a declaration of its rights and obligations under the lease by this court in accordance with the applicable provisions of law relating to declaratory judgments, to wit: CPLR Section 3001, and reasonable attorneys fees incurred in prosecution of the instant action.

10- That Plaintiff is entitled to a judgment declaring that the Defendant is obligated to sell the subject premises to Plaintiff, and to declare the Sale from Ainslie Street, LLC to 207 Ainslie LLC to be null and void.

11- That Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff demands a judgment as follows: (a) permanent injunction compelling Defendant to sell the premises to Plaintiff, (b) Declaratory judgment providing that the Defendant is obligated to sell the premises to Plaintiff, and to declare the Sale from Ainslie Street LLC to 207 Ainslie LLC to be null and void (c) Granting such other, further and different relief as to this court may seem just and proper in the premises all together with the costs and disbursements of this action.

Dated: November 7, 2014

Yours, etc
MARC ARONSON
Attorney for Plaintiff
107 Smith Street
Brooklyn, N.Y. 11201
718-237-1960

**TO:**
207 Ainslie, LLC
c/o Sidrane & Schwartz-Sidrane, LLP,
1427 Sturl Avenue,
Hewlett. NY 11557

Ainslie Street LLC
451 Bell Street, West Hempstead, NY 11552

The City of New York,
The Law Department
1 Centre Street, 17th Floor
New York, NY 10007-2601

STATE OF NEW YORK COUNTY OF

I, the undersigned, being duly sworn deposes and says : I am the Officer of the

Plaintiff in this proceeding; I have read the foregoing Summons and Verified Complaint

and know the contents thereof; the same is true to my knowledge, except as to the matters

therein stated to be alleged on information and belief, and as to those matter I believe

them to be true.


SWORN TO BEFORE ME ON

THIS ⅂⁺    DAY OF November 2014

_____

Frank Citera

CARMEN VASQUEZ
Notary Public, State of New York
No. 01VA6076680
Qualified in Nassau County
My Commission Expires July 1, 20_18

INDEX NO.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------X
CONSELYEA STREET BLOCK ASSOCIATION, INC.,

                    Plaintiff,
            -against-
207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET LLC
                    Defendants

_____SUMMONS AND VERIFIED COMPLAINT_____

MARC ARONSON
ATTORNEY FOR PLAINTIFF
107 Smith Street
Brooklyn, N.Y. 11201
(718) 237-1960

To:

                              Signature (Rule 130-1.1-a)

Attorney (s) for                    Marc Aronson
Please take notice
( ) Notice of Entry
that the within is a  true copy of a
duly entered in the office of the clerk of the within named court on

( )Notice of Settlement
that an order
of which the within is a true copy will be presented for settlement to the
Hon.
Of the within named court at
On          20       at          m.

Dated: Brooklyn, N.Y.
          ,2014

                         Yours etc.
                         Marc Aronson

                    Attorney for Plaintiff
                         107 Smith Street
                         Brooklyn, N.Y. 11201
                         (718) 237-1960

# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------X
CONSELYEA STREET BLOCK ASSOCIATION, INC.,       Index Number 15873/2014

                Plaintiff,

                             NOTICE OF APPEARANCE AND
                             VERIFIED ANSWER

       -against-

207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET, LLC,

                Defendants.
-----------------------------------------------------------------------X

Sidrane and Schwartz Sidrane, LLP, 119 North Park Ave. Suite 201, Rockville Centre, NY
11570, (516) 569 – 9539, hereby appears on behalf of Defendant 207 Ainslie, LLC (hereinafter
"Defendant"), demands that all papers and proceedings be served upon said counsel and answers
the complaint as follows:

1.   Defendant denies knowledge or information sufficient to form an opinion regarding the

     allegations contained in paragraphs one and two of the complaint.

2.   Defendant denies the allegations contained in paragraphs three, four, five, six, seven,

     eight, nine, ten and eleven of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

3.   Plaintiff has no written lease with 207 Ainslie, LLC the owner of the premises located at

     211 Ainslie St., New York (the "premises").

4.   Plaintiff had no written lease with the former owner of the premises, Ainslie Street, LLC.

5.   The City of New York entered into a lease (the "Lease") with the former owner by

     written agreement dated December 5, 1995.

6.   The City of New York terminated the Lease by written notice dated October 19, 2012

     pursuant to article 3 in the lease itself.

7.  As such the Plaintiff did not and does not occupy the premises as a tenant with a written lease and is not entitled to any of the terms or conditions contained in the Lease between the former owner and the City of New York ("City").

8.  As such Ainslie Street, LLC was not required to provide the Plaintiff with a right of first refusal pursuant to article 27 of the lease to purchase the subject premises when it sold the Premises to the owner.

## NO RIGHT OF FIRST REFUSAL WAS IN EFFECT AT THE TIME OF SALE

9.  Even were the Plaintiff correct in arguing that it was a tenant of the premises pursuant to the written lease with the City of New York and the former owner Ainslie Street, LLC, (which point is not conceded and is specifically contested) the right of first refusal in the Lease with the City expired upon the City's surrender of the premises by notice pursuant to article 3 in the lease.

10. Article 3 provides that the tenant, the City of New York, May terminate the lease on one year's written notice to the landlord.

11. The City did properly notice and terminate the Lease, on or about October 31, 2013.

12. Article 53 in the lease, which provides for the tenant's right of first refusal, is only in effect during the term of the Lease or any renewal thereof.

13. As the City terminated the lease prior to the sale of the property to the Defendant 207 Ainslie, LLC, no right of first refusal then existed at the time of sale, neither in favor of Plaintiff, or the City.

14. Defendant Ainslie 207, LLC therefore demands that the first cause of action be denied and dismissed and that no injunction compelling the Defendant 207 Ainslie, LLC to sell the property to the Plaintiff be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

15. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

16. There is no justiciable or real controversy between 207 Ainslie, LLC, the current owner

    of the property and the Plaintiff Conselyea Street Block Association, Inc. (Hereinafter

    "Conselyea"). As Conselyea has no right of first refusal and is not a party to a written

    lease with such right, either with the former owner or the current owner, Conselyea is not

    entitled to the relief sought in the second cause of action. Therefore, 207 Ainslie, LLC is

    not obligated to sell the property to the Plaintiff and the Plaintiff's second cause of action

    must be denied and the Court issue a declaratory judgment that the Plaintiff neither has

    nor had any right of first refusal to purchase to property.

17. Plaintiff has no basis, either statutory or contractual, to claim a right to legal fees in this

    action, and therefore, so much of the plaintiff's second cause of action must be denied.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

18. Defendant 207 Ainslie, LLC caused a 30 day notice of termination to be served upon the

    Plaintiff.

19. The Notice of Termination has expired, effectively terminating any tenancy that the

    Plaintiff had at the subject premises. No stay or injunction was obtained prior to the

    running of the Notice of Termination.

20. Although the Plaintiff attempted to challenge service of the Notice of Termination upon

    itself, such challenge was dismissed by the Court in a related proceeding in the Civil

    Court of the City of New York, Kings County, under Index Number 56109/2014.

21. Therefore, all of the Plaintiff's rights and interest in the subject premises have been

properly terminated.

22. Wherefore the Defendant 207 Ainslie, LLC respectfully requests that the complaint be

dismissed in its entirety.

Yours, etc.,

Sidrane & Schwartz-Sidrane, LLP
Attorneys for the Defendant 207 Ainslie, LLC
119 North Park Ave., Suite 201
Rockville Centre, NY 11570
(516) 569 – 9539

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
                   )ss.:
COUNTY OF NASSAU )

        I, the undersigned, an attorney admitted to practice in the Courts of New York State, state that I am a member of the law firm of SIDRANE & SCHWARTZ-SIDRANE, LLP, the Attorneys of Record for the Defendant 207 Ainslie, LLC, in the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by me and not by the Defendant is because the Defendant is outside the county wherein Defendant's Counsel maintains its office. The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

        The books and records of the Defendant which have been provided to me.

        I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:    Hewlett, New York
           November 19, 2014

_____
Steven D. Sidrane, Esq.

# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------X

CONSELYEA STREET BLOCK ASSOCIATION, INC.,       Index Number 15873/2014

                 Plaintiff,

                                     NOTICE OF APPEARANCE AND
                                     VERIFIED ANSWER

      -against-

207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET, LLC,

                       Defendants.

-------------------------------------------------------------------------X

Sidrane and Schwartz Sidrane, LLP, 119 North Park Ave. Suite 201, Rockville Centre, NY 11570, (516) 569 – 9539, hereby appears on behalf of Defendant 207 Ainslie, LLC (hereinafter "Defendant"), demands that all papers and proceedings be served upon said counsel and answers the complaint as follows:

1. Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraphs one and two of the complaint.

2. Defendant denies the allegations contained in paragraphs three, four, five, six, seven, eight, nine, ten and eleven of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

3. Plaintiff has no written lease with 207 Ainslie, LLC the owner of the premises located at 211 Ainslie St., New York (the "premises").

4. Plaintiff had no written lease with the former owner of the premises, Ainslie Street, LLC.

5. The City of New York entered into a lease (the "Lease") with the former owner by written agreement dated December 5, 1995.

6. The City of New York terminated the Lease by written notice dated October 19, 2012 pursuant to article 3 in the lease itself.

7.  As such the Plaintiff did not and does not occupy the premises as a tenant with a written lease and is not entitled to any of the terms or conditions contained in the Lease between the former owner and the City of New York ("City").

8.  As such Ainslie Street, LLC was not required to provide the Plaintiff with a right of first refusal pursuant to article 27 of the lease to purchase the subject premises when it sold the Premises to the owner.

## NO RIGHT OF FIRST REFUSAL WAS IN EFFECT AT THE TIME OF SALE

9.  Even were the Plaintiff correct in arguing that it was a tenant of the premises pursuant to the written lease with the City of New York and the former owner Ainslie Street, LLC, (which point is not conceded and is specifically contested) the right of first refusal in the Lease with the City expired upon the City's surrender of the premises by notice pursuant to article 3 in the lease.

10. Article 3 provides that the tenant, the City of New York, May terminate the lease on one year's written notice to the landlord.

11. The City did properly notice and terminate the Lease, on or about October 31, 2013.

12. Article 53 in the lease, which provides for the tenant's right of first refusal, is only in effect during the term of the Lease or any renewal thereof.

13. As the City terminated the lease prior to the sale of the property to the Defendant 207 Ainslie, LLC, no right of first refusal then existed at the time of sale, neither in favor of Plaintiff, or the City.

14. Defendant Ainslie 207, LLC therefore demands that the first cause of action be denied and dismissed and that no injunction compelling the Defendant 207 Ainslie, LLC to sell the property to the Plaintiff be granted.

AS AND FOR A SECOND AFFIRMATIVE DEFENSE

15. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

16. There is no justiciable or real controversy between 207 Ainslie, LLC, the current owner

of the property and the Plaintiff Conselyea Street Block Association, Inc. (Hereinafter

"Conselyea"). As Conselyea has no right of first refusal and is not a party to a written

lease with such right, either with the former owner or the current owner, Conselyea is not

entitled to the relief sought in the second cause of action. Therefore, 207 Ainslie, LLC is

not obligated to sell the property to the Plaintiff and the Plaintiff's second cause of action

must be denied and the Court issue a declaratory judgment that the Plaintiff neither has

nor had any right of first refusal to purchase to property.

17. Plaintiff has no basis, either statutory or contractual, to claim a right to legal fees in this

action, and therefore, so much of the plaintiff's second cause of action must be denied.

AS AND FOR A THIRD AFFIRMATIVE DEFENSE

18. Defendant 207 Ainslie, LLC caused a 30 day notice of termination to be served upon the

Plaintiff.

19. The Notice of Termination has expired, effectively terminating any tenancy that the

Plaintiff had at the subject premises. No stay or injunction was obtained prior to the

running of the Notice of Termination.

20. Although the Plaintiff attempted to challenge service of the Notice of Termination upon

itself, such challenge was dismissed by the Court in a related proceeding in the Civil

Court of the City of New York, Kings County, under Index Number 56109/2014.

21. Therefore, all of the Plaintiff's rights and interest in the subject premises have been properly terminated.

22. Wherefore the Defendant 207 Ainslie, LLC respectfully requests that the complaint be dismissed in its entirety.

Yours, etc.,

Sidrane & Schwartz-Sidrane, LLP
Attorneys for the Defendant 207 Ainslie, LLC
119 North Park Ave., Suite 201
Rockville Centre, NY 11570
(516) 569 – 9539

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
                  )ss.:
COUNTY OF NASSAU  )

      I, the undersigned, an attorney admitted to practice in the Courts of New York State, state that I am a member of the law firm of SIDRANE & SCHWARTZ-SIDRANE, LLP, the Attorneys of Record for the Defendant 207 Ainslie, LLC, in the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by me and not by the Defendant is because the Defendant is outside the county wherein Defendant's Counsel maintains its office. The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

      The books and records of the Defendant which have been provided to me.

      I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:    Hewlett, New York
          November 19, 2014

                                          Steven D. Sidrane, Esq.

# EXHIBIT "D"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X
CONSELYEA STREET BLOCK ASSOCIATION, INC.,      Index Number 15873/2014
                    Plaintiff,

                               VERIFIED ANSWER TO CROSS-
                               CLAIMS OF CO-DEFENDANT
                               CITY OF NEW YORK

     -against-

207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET, LLC,

                 Defendants.
------------------------------------------------------------------------X

Sidrane and Schwartz Sidrane, LLP, 119 North Park Ave. Suite 201, Rockville Centre, NY 11570, (516) 569 – 9539, hereby appears on behalf of Defendant 207 Ainslie, LLC (hereinafter "Defendant"), demands that all papers and proceedings be served upon said counsel and answers the City of New York's Cross-Claims as follows:

1.   Defendant 207 Ainslie, LLC (hereinafter "Defendant") denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 15 of the Defendant City of New York's (Hereinafter "City") Answer.

2.   Defendant admits the allegations contained in paragraph 16 of the City's Answer.

3.   Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 17 of the City's Answer.

4.   Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 18 of the City's Answer.

5.   Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 19 of the City's Answer.

6.   Defendant admits the allegations contained in paragraph 20 of the City's Answer.

7.   Defendant admits the allegations contained in paragraph 21 of the City's Answer.

8.   Defendant admits the allegations contained in paragraph 22 of the City's Answer.

9.   Defendant admits the allegations contained in paragraph 23 of the City's answer.

10. Defendant denies the allegations contained in paragraph 24 of the City's answer.

11. Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 25 of the City's answer.

12. Defendant denies the allegations contained in paragraph 26 of the City's answer.

13. Defendant admits the allegations contained in paragraph 27 of the City's answer.

14. Defendant admits the allegations contained in paragraph 28 of the City's answer.

15. Defendant denies the allegations contained in paragraph 29 of the City's answer.

16. Defendant denies the allegations contained in paragraph 30 of the City's answer.

17. Defendant denies the allegations contained in paragraph 31 of the City's answer.

18. Defendant denies the allegations contained in paragraph 32 of the City's answer.

19. Defendant denies the allegations contained in paragraph 33 of the City's answer.

20. Defendant denies the allegations contained in paragraph 34 of the City's answer.

21. Defendant admits the allegations contained in paragraph 35 in the City's answer.

22. Defendant denies the allegations in paragraph 36 of the City's answer.

23. Defendant denies the allegations contained in paragraph 37 of the City's answer.

24. Defendant denies the allegations in paragraph 38 of the City's answer.

25. Defendant denies knowledge or information sufficient to form an opinion regarding the allegations contained in paragraph 39 of the City's answer.

26. Defendant denies the allegations in paragraph 40 of the City's answer.

27. Defendant denies the allegations in paragraph 41 of the City's answer.

28. Defendant denies the allegations contained in paragraph 42 of the City's answer.

15673/2014 Verified Answer TO CROSS CLAIM Case 1-16-41426-nhl   Doc 15   Filed 05/20/16   Entered 05/20/16 14:59:52    Page 3 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5 · Filed 04/19/16   Page 4 of 54 PageID·#: 27

## THE CITY FAILED TO FULFILL ITS OBLIGATIONS UNDER THE LEASE.

29. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

30. Under a lease dated June 28, 1996 (the "Lease"), the Defendant Ainslie Street, LLC (the "Owner"), rented the building to the City to use as a senior center and child day care center for a 20 year term commencing January 18, 1996.

31. The lease provided the City could surrender its leasehold interests and terminate the Lease by providing notice one year in advance to the Owner. The City exercised its right to terminate the Lease and surrender the property on October 19, 2012.

32. Article 12 of the Lease requires the City upon the expiration or other termination of the term of the Lease to quit and surrender the demised premises to the Owner in good order and condition with ordinary wear and tear excepted.

33. The City failed to live up to its obligations under article 12 of the Lease.

34. The City and/or its agents or invitees remained in possession after the termination of the Lease and the Defendant is entitled to a judgment of possession and a warrant of eviction as against the plaintiff and the City.

35. Here, the City seeks equitable relief but stands before the Court with dirty hands. The City is not entitled to the relief it seeks.

### THE CITY IS NOT ENTITLED TO A RIGHT OF FIRST REFUSAL AFTER THE TERMINATION OF THE LEASE

36. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

37. Article 27 of the Lease only requires the Owner to transmit to the City a bona fide offer for purchase from a third person that the landlord shall desire to accept. Moreover, this obligation only exists so long as the Lease is in effect.

38. These conditions were not met under article 27 of the Lease during the term of the Lease when the right of first refusal was in effect.

39. The Defendant did not purchase and did not agree to purchase the premises from the Owner Ainslie Street LLC prior to the termination of the City's Lease on October 31, 2013.

40. The Owner never received a bona fide offer to purchase the premises from Defendant prior to the termination of the City's Lease.

41. On or about March 20, 2013 an entity known as 211 Ainslie St., LLC, as seller, entered into a contract with the Gurino Family Partnership for the purchase of any rights it may have had in the subject premises. A copy of this contract of sale is annexed hereto as Exhibit "A".

42. 211 Ainslie St. LLC was not, is not, nor ever was the Owner of the premises, and never owned any interest in the subject premises, which was owned by an entity known as Ainslie Street LLC. Thus, this March 20, 2013 contract of sale does not trigger a right of first refusal under the Lease in favor of the City as it is not a bona fide offer to or by the Owner.

43. On or about March 20, 2013 the Gurino Family Partnership and Anthony Gurino entered in turn, into a contract for the sale of their rights (if any) in the property with an entity known as Ainslie Estates LLC. A copy of this contract is annexed hereto as Exhibit "B".

44. Neither 211 Ainslie St. LLC, the Gurino Family Partnership nor Ainslie Estates LLC,7 at any time, ever owned any interest in the subject premises and while these contracts may have bound the named parties to them, and defined their own contractual obligations, they were not contracts which triggered a right of first refusal under the Lease as they

were not the Owner, nor did they bind the Owner of the property, nor could they constitute evidence of an intent to sell by the Owner, which was Ainslie Street LLC.

45. Contrary to the Defendant City's assertions in their cross-claims against Defendant 207 Ainslie, LLC, there was no bona fide contract in effect between the Owner of the premises, the landlord in the Lease, and any other party. As such, the right of first refusal in Article 27 of the Lease never came into effect pursuant to the contracts annexed hereto as Exhibits "A" & "B". These are the contracts referred to by the City in its cross-claims against the Defendant.

46. Thereafter, by agreement dated June 11, 2013, between Ainslie Street LLC and the Gurino Family Partnership and Ainslie Estates LLC (denoted therein collectively "purchaser"), the Owner agreed to sell to the purchasers the subject premises.

47. The proposed purchasers could not obtain the funds necessary to purchase the property and could not accomplish this sale.

48. This contract was abandoned by the Owner, the Owner never moved forward with this sale and never closed under this contract. Thus, any right of first refusal evaporated when the Owner decided to not sell the property to Ainslie Estates, as the Owner had abandoned the contract dated June 11, 2013.

49. Any right of first refusal the City held was extinguished when the contract with the third-party expired and was abandoned. Thus, as a result of the Owner's abandonment of these contracts no right of first refusal accrued to the City under the Lease.

50. Thus, the City had and has no right to first refusal to enforce and its cross-claims as against Defendant 207 Ainslie, LLC must be dismissed.

## THE OWNER ONLY AGREED TO AND ACCEPTED A
## BONA FIDE OFFER TO SELL AFTER THE LEASE EXPIRED

51. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

52. Thereafter, in November of 2013, after the City's right of first refusal had already
   expired, the Defendant 207 Ainslie, LLC learned that the subject property was available
   for sale and reached an agreement with the Owner to purchase the property.

53. On the 27th day of November, 2013 Defendant closed on the sale with the Owner directly.

54. At the closing the Defendant, as Assignee, executed an assignment of contract of sale
   with Ainslie Estates, LLC as assignor, clearing any claims any of the prior potential
   purchasers may have had regarding the property.

55. The Defendant paid $7,000,000.00 in total to purchase a fee simple interest in the subject
   property. This $7,000,000.00 sum was paid by Defendant, 207 Ainslie, LLC, pursuant to
   an agreement entered into after the City's lease had already expired, to Ainslie Estates,
   LLC, who in turn paid $6,000,000.00 to Gurino and the Gurino Family Partnership, who
   in turn paid $4,500,000.00 to Ainslie Street, LLC.

56. Each of these sums was reported on New York State Tax returns filed at closing.

57. The sale of the subject property to the Defendant did not trigger a right of first refusal
   under the Lease as this Agreement to purchase the property occurred after this right had
   expired pursuant to the terms of the Lease itself.

58. However, in the event the City is granted right of first refusal of the offer which was
   made to the Owner by the Defendant 207 LLC and accepted by the Owner, this offer, and
   the actual sale price was $7 million.

59. Thus, should the court grant the City a right of first refusal to purchase the property on
   the same terms and conditions as the only bona fide offer (notwithstanding that the offer

occurred after the termination of the City's Lease), the City's obligation is to meet the

bona fide offer of $7 million which was actually consummated at the sale of the property

to 207 Ainslie LLC, and to accept this offer, pursuant to the requirements of the New

York City Charter, with a public hearing, mayoral approval and signoffs by all the

requisite departments in City government, within 90 days. Should the City fail to fully

authorize such sale, and thereby accept such an offer under the Contract within 90 days,

the City will not be entitled to purchase the Premises, as this right, if any, evaporates 90

days afterwards.

## THE CITY IS NOT ENTITLED TO SPECIFIC
## PERFORMANCE UNDER THE LEASE

60. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

61. The Lease between the City of New York and Ainslie Street LLC required that the Lease

be subject to public hearing and Mayoral approval pursuant to section 1602 (3) (a) of the

New York City Charter. Furthermore the Lease may only be executed by the Deputy

Commissioner the Department of Gen. services after a public hearing and Mayoral

approval pursuant to section 1602 (3)(a) of the New York City Charter and after approval

as to form by the Corporation Counsel of the City of New York.

62. The Mayoral approval pursuant to the New York City charter and the approval by the

City Planning Commission of the Lease, and the other approvals and process, only

permitted the City to Lease the subject premises, as specifically noted on page 2 of the

Lease.

63. The City never sought or received approval, nor held a public hearing or followed the

other requirements under the New York City Charter to allow the City to actually

purchase the subject property. The City was not and is not authorized to purchase this

property and did not have the authority at the time it entered into this Lease to purchase this property. The City cannot attempt to exercise a right it never held, here, a right of first refusal.

64. Moreover, to the extent that the City held a right of first refusal under the Lease the City was not ready, willing, and able to purchase the property given the restrictions under the City's Charter. Thus, as the City was not properly authorized to exercise a right of first refusal to purchase the subject property, and not ready willing and able to do so, the Lease clause is unenforceable.

65. In order for the City to be entitled to specific performance under this Lease provision, the City must have been ready, willing and able to purchase the property within the time frame set forth in Article 27 of the Lease and when specific performance is ordered by the Court, if ever. This limit is 90 days. Even were the Court to overlook the City's lack of authority to agree to enter into a purchase pursuant to this right of first refusal, which right was never approved by the Mayor, nor put to public review, once the City has been offered this purchase, or is judicially granted this opportunity, it has received all it had bargained for under the Lease.

66. Here, the Lease was only approved by the Mayor and a public hearing held based on a Lease of the property, not a sale. A sale was never contemplated by the procedures followed by the City in executing the Lease at issue here. Thus, the City never held a right or the authority to purchase this property.

67. As the City is required under the Lease and the New York City Charter to hold a public hearing and receive Mayoral approval, among other approvals and procedures, prior to a

purchase, the City is and was not ready willing and able to purchase the property or exercise any right of first refusal.

68. As none of these prerequisites was accomplished by the City, the City was not ready, willing and able to purchase to property and thus is not entitled to specific performance.

69. Moreover, specific performance is not available as it is clear that the City was not ready willing and able to buy the property at the time current Owner purchased it.

## THE CITY IS BARRED FROM EXERCISING ANY RIGHT OF FIRST REFUASAL BY LACHES

70. Defendant repeats and realleges each of the foregoing paragraphs as if set out in full here.

71. The City knew of the transfer of the subject property to the current Owner no later than April 22, 2014. Moreover, the fact of the transfer of the subject premises to the current owner, the Defendant, is public knowledge and recorded in ACRIS.

72. By telephone call and correspondence the Defendant alerted the City to the sale of the subject premises in April of 2014 when the Defendant's counsel called and spoke to Jeffrey R. Kondrat, Assistant Commissioner, Real Estate Transactions Asset Management, Dept. of Citywide Administrative Services, City of New York.

73. Thereafter, the City was again alerted to the sale of the subject premises by Defendant's counsel by telephone conversations and correspondence with Steven Mortman, Deputy Counsel in the City's Department of Citywide Administrative Services, in early May of 2014.

74. Despite this notice to the City the City failed to exercise its right of first refusal, if any, under the then expired Lease.

75. The City failed to assert a claim prior to or in the pending action, until it was directed to file an Answer by the Court, which it did on June 5, 2015, 14 months after having been alerted to the sale of the subject premises to the Defendant.

76. By virtue of the City's delay in asserting a claim against the Defendant the Defendant is prejudiced.

77. The value of the subject property has increased greatly in the interim period between the City being put on notice of the sale of the property and the City asserting a claim under the Lease to a right of first refusal.

78. In addition, the City would reap a windfall in the event were it allowed to purchase the property for $7 million as the current price and value of the property on the date of transfer almost 2 years ago is vastly different. This property is not worth more.

79. Wherefore the Defendant 207 Ainslie, LLC respectfully requests that the City's cross-claims be dismissed in their entirety, and the Court enter a declaration: (1) that the City's rights to first refusal under the Lease never ripened prior to the expiration of the Lease and do not exist at this time; (2) that, any rights the City held cannot be exercised in this Action and the City is barred by the doctrine of laches in failing to exercise any rights to first refusal it may have had for more than a year; (3) that, in the alternative, should the Court find the City be entitled to exercise a right of first refusal, that the City's right is limited to the terms of the Lease and that the right must be exercised, if at all, within 90 days, including all formal approvals, pursuant to Charter of the City of New York; and (4) that the City's exercise of a right of first refusal to purchase the property be set at the current value of the property, or as a minimum the price the Defendant paid, in the sum of $7,000,000.00.

15873/2014 Verified Answer TO CROSS CLAIMS Case 1-16-41426-nhl   Doc 15   Filed 05/20/16   Entered 05/20/16 14:59:52   Page 11 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5   Filed 04/19/16   Page 12 of 54 PageID #: 35

Yours, etc.,

Sidrane & Schwartz-Sidrane, LLP
Attorneys for the Defendant 207 Ainslie, LLC
719 North Park Ave., Suite 201
Rockville Centre, NY 11570
(516) 569 – 9539

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
                  )ss.:
COUNTY OF NASSAU )

         I, the undersigned, an attorney admitted to practice in the Courts of New York
State, state that I am a member of the law firm of SIDRANE & SCHWARTZ-SIDRANE, LLP,
the Attorneys of Record for the Defendant 207 Ainslie, LLC, in the within action; I have read
the foregoing Answer and know the contents thereof; the same is true to my own knowledge,
except as to those matters therein alleged to be on information and belief, and as to those matters,
I believe them to be true. The reason this verification is made by me and not by the Defendant is
because the Defendant is outside the county wherein Defendant's Counsel maintains its office.
The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

     The books and records of the Defendant which have been provided to me.

     I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:    Rockville Centre, New York
           July 16, 2015

                                  Steven D. Sidrane, Esq.



15673/2014 Verified Answer TO CROSS c...

Contract of Sale for New York office, commercial and multi-family residential premises

# Contract of Sale—Office, Commercial and Multi-Family Residential Premises

## Table of Contents

Schedule A. Description of premises (to be attached)
Schedule B. Permitted exceptions
Schedule C. Purchase price
Schedule D. Miscellaneous
Schedule E. Rent schedule (to be attached)
Section 1. Sale of premises and acceptable title
Section 2. Purchase price, acceptable funds, existing
    mortgages, purchase money mortgage and
    escrow of downpayment
Section 3. The closing
Section 4. Representations and warranties of seller
Section 5. Acknowledgments of purchaser
Section 6. Seller's obligations as to leases
Section 7. Responsibility for violations

Section 8. Destruction, damage or condemnation
Section 9. Covenants of seller
Section 10. Seller's closing obligations
Section 11. Purchaser's closing obligations
Section 12. Apportionments
Section 13. Objections to title, failure of seller or
    purchaser to perform and
Section 14. Broker
Section 15. Notices
Section 16. Limitations on survival of representations,
    warranties, covenants and other
    obligations
Section 17. Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated the    , day of March, 2013,

Between

**211 Ainsley Street LLC**

Address:
451 Bell Street
West Hempstead, New York 11552
("Seller") and

**Gurino Family Partnership**

Address:
82-17 153rd Avenue, Suite 206
Howard Beach, New York 11414
("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

### Schedule A
### DESCRIPTION OF PREMISES*

The Premises are located at or known as:
Street Address:207-217 Ainslic Street
City:Brooklyn    State:New York    Zip:11211
Tax Map Designation:    Section:    Block:2770    Lot:0001
*See annexed Addendum to Exhibit A for a complete description of the Premises.
(☐ metes and bounds description attached hereto)

### Schedule B
### PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title unmarketable.

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7.    (a)    Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

   (b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

   (c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

   (d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

### Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows:

|  |  |  |
|---|---|---|
| (a) | By check subject to collection, the receipt of which is hereby acknowledged by Seller: | $50,000.00 |
| (b) | By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02: | $4,450,000.00 |
| (c) | By acceptance of title subject to the following Existing Mortgage(s): | $N/A |
| (d) | By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, in the sum of $N/A payable as follows: |  |

Interest Rate:N/A  Term:N/A  Monthly payment:N/A  Prep. Fee: N/A  Other provisions:N/A                     $N/A
Making for a total Purchase Price of:                                                                        $4,500,000.00

## Schedule D
### MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):None.

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):N/A

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):N/A

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):N/A

5. Seller's tax ID Nos (§2.05) #1:          #2:          #3:          #4:

6. Buyer's tax ID Nos (§2.05) #1:          #2:          #3:          #4:

7. Scheduled time and date of Closing (§3.01): Date:June 17, 2013 TIME BEING OF THE ESSENCE Time:10:00 a.m.

o'clock.

8. Place of Closing (§3.01):Baltzis Daigle LLP, 592 Fifth Avenue, 4th Floor, New York, New York 10036

9. Assessed valuation of Premises (§4.10):$2,128,050.00

10. Fiscal year and annual real estate taxes on Premises (§4.10): Fiscal Year:7/01/2012-6/01/2013    Annual Taxes:

$111,617.13

11. Tax abatements or exemptions affecting Premises (§4.10):N/A

12. Assessments on Premises (§4.13):101,250.00

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):N/A

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):N/A

15. Broker, if any (§14.01):None

16. Party to pay broker's commission (§14.01):N/A
17. Address for notices (§15.01):
    If to Seller:
    211 Ainslee Street, LLC
    451 Bell Street, West Hempstead, New York 11552

        with a copy to:Seller's Attorney
        Christopher Thompson, Esq.
        33 Davison Lane East, West Islip, New York 11795

    If to Purchaser:
    Gurino Family Partnership
    82-17 153rd Avenue, Suite 206, Howard Beach, New York 11414

        with a copy to:Buyer's Attorney
        Baltzis Daigle LLP
        592 Fifth Avenue, 4th Floor, New York, New York 10036

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):N/A

19. Additional Schedules or Riders (§17.08):

## Schedule E
### RENT SCHEDULE

(☐ if more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)

| Name | Apt. No. | Rent | Due | Security |
|---|---|---|---|---|

15873/2014 Verified Answer TO CROSS C... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 15 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5   Filed 04/19/16   Page 16 of 54 PageID #: 39

### Section 1. Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as Street Address:207-217 Ainslee Street,
City: Brooklyn State: New York Zip:11211
Tax Map Designation: Section:      Block:2770 Lot:0001

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

### Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $4,500,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

~~§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required there under prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the~~

~~difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.~~

~~(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contract, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent~~

~~(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or~~

~~(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.~~

~~If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).~~

~~§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefore and the filing fees for any financing statements delivered in connection therewith.~~

~~(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii) if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreements~~

Printed: 4/19/2016

15673/2014 Verified Answer TO CROSS Qi...

~~agreements reasonably required by the mortgagee to confirm~~
~~such subordination.~~

~~(c) The Purchase Money Mortgage shall contain the~~
~~following additional provisions:~~

~~(i)    The mortgagor or any owner of the~~
mortgaged premises shall have the right to ~~prepay the entire~~
unpaid indebtedness together with ~~accrued~~ interest, but
without penalty, at any time ~~on~~ or after [insert the day
following the last day ~~of the~~ fiscal year of the mortgagee in
which the ~~Closing~~ occurs or, if a Prepayment Date is specified
in ~~Schedule~~ D, the specified Prepayment Date], or not less
~~than 10 days' written notice to the holder hereof."~~

~~(ii)    Notwithstanding anything to the~~
contrary contained herein, the obligation of the mortgagor for
the payment of the indebtedness and for the performance of
the terms, covenants and conditions contained herein and in
the note secured hereby is limited solely to recourse against
the property secured by this mortgage, and in no event shall
the mortgagor or any principal of the mortgagor, disclosed or
undisclosed, be personally liable for any breach of or default
under the note or this mortgage or for any deficiency resulting
from or through any proceedings to foreclose this mortgage,
nor shall any deficiency judgment, money judgment or other
personal judgment be sought or entered against the mortgagor
or any principal of the mortgagor, disclosed or undisclosed,
but the foregoing shall not adversely affect the lien of this
~~mortgage or the mortgagee's rights of foreclosure."~~

~~(iii)    The addition to performing its~~
obligations under Section 274-a of the Real Property Law, the
mortgagee, if other than one of the institutions listed in
Section 274-a agrees that, within 10 days after written request
by the mortgagor, but not more than twice during any period
of 12 consecutive months, it will execute, acknowledge and
deliver without charge a certificate of reduction in reasonable
form (a) certifying as to (1) the then unpaid principal balance
of the indebtedness secured hereby, (2) the maturity date
thereof, (3) the rate of interest, (4) the last date to which
interest has been paid and (5) the amount of any escrow
deposits then held by the mortgagee, and (b) stating, to the
knowledge of the mortgagee, whether there are any alleged
~~defaults hereunder, and, if any, specifying the nature thereof."~~

~~(iv)    All notices required or desired to be~~
given under this mortgage shall be in writing and shall be
delivered personally or shall be sent by prepaid registered or
certified mail, addressed to the mortgagor and mortgagee at
the addresses specified in this mortgage or to such other
parties or at such other addresses, not exceeding two, as may
be designated in a notice given to the other party or parties in
~~accordance with the provisions hereof."~~

~~(v)    The additional provisions, if any,~~
~~specified in a rider hereto.~~

§2.05. (a) If the sum paid under paragraph (a) of
Schedule C or any other sums paid on account of the Purchase
Price prior to the Closing (collectively, "Downpayment") are
paid by check or checks drawn to the order of and delivered to
Seller's attorney or another escrow agent ("Escrowee"), the
Escrowee shall hold the proceeds thereof in escrow in a
special bank account (or as otherwise agreed in writing by
Seller, Purchaser and Escrowee) until the Closing or sooner
termination of this contract and shall pay over or apply such
proceeds in accordance with the terms of this section.
Escrowee need not hold such proceeds in an interest-bearing
account, but if any interest is earned thereon, such interest
shall be paid to the same party entitled to the escrowed
proceeds, and the party receiving such interest shall pay any
income taxes thereon. The tax identification numbers of the
parties are either set forth in Schedule D or shall be furnished
to Escrowee upon request. At the Closing, such proceeds and
the interest thereon, if any, shall be paid by Escrowee to
Seller. If for any reason the Closing does not occur and either
party makes a written demand upon Escrowee for payment of
such amount, Escrowee shall give written notice to the other
party of such demand. If Escrowee does not receive a written
objection from the other party to the proposed payment within
10 business days after the giving of such notice, Escrowee is
hereby authorized to make such payment. If Escrowee does
receive such written objection within such 10 day period or if
for any other reason Escrowee in good faith shall elect not to

make such payment, Escrowee shall continue to hold such
amount until otherwise directed by written instructions from
the parties to this contract or a final judgment of a court.
However, Escrowee shall have the right at any time to deposit
the escrowed proceeds and interest thereon, if any, with the
clerk of the Supreme Court of the county in which the Land is
located. Escrowee shall give written notice of such deposit to
Seller and Purchaser. Upon such deposit Escrowee shall be
relieved and discharged of all further obligations and
responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting
solely as a stakeholder at their request and for their
convenience, that Escrowee shall not be deemed to be the
agent of either of the parties, and that Escrowee shall not be
liable to either of the parties for any act or omission on its part
unless taken or suffered in bad faith, in willful disregard of
this contract or involving gross negligence. Seller and
Purchaser shall jointly and severally indemnify and hold
Escrowee harmless from and against all costs, claims and
expenses, including reasonable attorneys' fees, incurred in
connection with the performance of Escrowee's duties
hereunder, except with respect to actions or omissions taken or
suffered by Escrowee in bad faith, in willful disregard of this
contract or involving gross negligence on the part of
Escrowee.

(c) Escrowee has acknowledged agreement to these
provisions by signing in the place indicated on the signature
page of this contract.

### Section 3. The Closing

§3.01. Except as otherwise provided in this contract,
the closing of title pursuant to this contract ("Closing") shall
take place on the scheduled date and time of Closing specified
in Schedule D (the actual date of the Closing being herein
referred to as "Closing Date") at the place specified in
Schedule D. Time is of the Essence that the parties herein close by
the Closing Date.

### Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as
follows:

§4.01. Unless otherwise provided in this contract,
Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing
Mortgage(s), no written notice has been received from the
Mortgagee(s) asserting that a default or breach exists
thereunder which remains uncured and no such notice shall
have been received and remains uncured on the Closing Date.
If copies of documents constituting the Existing Mortgage(s)
and note(s) secured thereby have been exhibited to and
initialed by Purchaser or its representative, such copies are
true copies of the originals and the Existing Mortgage(s) and
note(s) secured thereby have not been modified or amended
except as shown in such documents.

§4.03. The information concerning written leases
(which together with all amendments and modifications
thereof are collectively referred to as "Leases") and any
tenancies in the Premises not arising out of the Leases
(collectively, "Tenancies") set forth in Schedule E attached
hereto ("Rent Schedule") is accurate as of the date set forth
therein or, if no date is set forth therein, as of the date hereof,
and there are no Leases or Tenancies of any space in the
Premises other than those set forth therein and any subleases
or subtenancies. Except as otherwise set forth in the Rent
Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and
none of them has been modified, amended or extended;
(b) no renewal or extension options have been
granted to tenants;
(c) no tenant has an option to purchase the Premises;
(d) the rents set forth are being collected on a current
basis and there are no arrearages in excess of one month;

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owned to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such Schedule, if any, are and on the Closing Date will be owned by Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:

(a) amend, renew or extend any Lease in any respect, unless required by law;

(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or

(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with

(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and

(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that

would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Releting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Releting Expenses, prorated in each case over the term of this lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

### Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, ~~except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if~~

~~(a)  Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or~~

~~(b) the Building is a multiple dwelling and either~~

~~(i)  such violation is rent impairing and~~ causes rent to be unrecoverable under Section 302-a of the ~~Multiple Dwelling Law; or~~

~~(ii)  a proceeding has been validly~~ commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole ~~responsibility of Purchaser.~~

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all

such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:

(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or

(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

### Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

### Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

~~§9.01.  The Existing Mortgage(s) shall not be~~ amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to ~~be paid or made under the Existing Mortgage(s).~~

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

### Section 10. Seller's Closing Obligations

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 20 of 54 PageID #: 43

At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).

Seller shall pay the fees for recording such certificate(s). Any Mortgage which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

Section 11. Purchaser's Closing Obligations
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

~~§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for the Purchase Money Mortgage.~~

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
   (a) prepaid rents and Additional Rents (as defined in §12.03);
   (b) interest on the Existing Mortgage(s);
   (c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;
   (d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;
   (e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;
   (f) charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g) permitted administrative charges, if any, on tenants' security deposits;

(h) dues to rent stabilization associations, if any;

(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

(a) first to the month preceding the month in which the Closing occurred;

(b) then to the month in which the Closing occurred;

(c) then to any month or months following the month in which the Closing occurred; and

(d) then to the period prior to the month preceding the month in which the Closing occurred.

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

**Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03 Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance or otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

**Section 14. Broker**

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any

15873/2014 Verified Answer TO CROSS d...Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 21 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 22 of 54 PageID #: 45

~~representations, warranties or agreements contained in this~~
paragraph. The representations and obligations under this
paragraph shall survive the Closing or, if the Closing does not
~~occur, the termination of this contract~~

### Section 15. Notices

§15.01. All notices under this contract shall be in
writing and shall be delivered personally or shall be sent by
prepaid registered or certified mail, addressed as set forth in
Schedule D, or as Seller or Purchaser shall otherwise have
given notice as herein provided.

### Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract,
no representations, warranties, covenants or other obligations
of Seller set forth in this contract shall survive the Closing,
and no action base thereon shall be commenced after the
Closing. The representations, warranties, covenants and other
obligations of Seller set forth in §4.03, §6.01 and §6.02 shall
survive until the Limitation Date specified in Scheduled D (or
if none is so specified, the Limitation Date shall be the date
which is six months after the Closing Date), and no action
based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the
acceptance thereof by Purchaser, shall be deemed the full
performance and discharge of every obligation on the part of
Seller to be performed hereunder, except those obligations of
Seller which are expressly stated in this contract to survive the
Closing.

### Section 17. Miscellaneous Provisions

§17.01. If consent of the Existing Mortgagee(s) is
required under §2.03(b), Purchaser shall not assign this
contract or its rights hereunder without the prior written
consent of Seller. No permitted assignment of Purchaser's
rights under this contract shall be effective against Seller
unless and until an executed counterpart of the instrument of
assignment shall have been delivered to Seller and Seller shall
have been furnished with the name and address of the
assignee. The term "Purchaser" shall be deemed to include the
assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the
entire understanding between the parties with respect to the
transaction contemplated herein and all prior agreements,
understandings, representations and statements, oral or
written, are merged into this contract. Neither this contract nor
any provision hereof may be waived, modified, amended,
discharged or terminated except by an instrument signed by
the party against whom the enforcement of such waiver,
modification, amendment, discharge or termination is sought,
and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and
construed in accordance with, the law of the State of New
York.

§17.04. The captions in this contract are inserted for
convenience of reference only and in no way define, describe
or limit the scope or intent of this contract or any of the
provisions hereof.

§17.05. This contract shall be binding upon and shall
inure to the benefit of the parties hereto and their respective
heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective
until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall
include the feminine and neuter, the singular shall include the
plural and the plural shall include the singular, as the context
may require.

§17.08. If the provisions of any schedule or rider to
this contract are inconsistent with the provisions of this
contract, the provisions of such schedule or rider shall prevail.
Set forth in Schedule D is a list of any and all schedules and
riders which are attached hereto but which are not listed in the
Table of Contents.

**IN WITNESS WHEREOF,** the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):

_____
211 Ainslie Street LLC
By: Robert Fiducci, Member

BUYER(S)

_____
Garino Family Partnership
By: Anthony Garino, Partner

_____

_____

_____

_____

_____

_____

Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

_____
Christopher Thompson, Esq.

Rider to Contract of Sale dated March ___, 2013
By and Between 211 Ainslie Street LLC, Seller,
and Gurino Family Partnership, Purchaser, for the Sale of
207-217 Ainslie Street, Brooklyn, New York 11211

1.    In the event of a conflict between this Rider and the Contract of Sale, this Rider shall govern.

2.    All adjustments and apportionments shall be made on the basis of a thirty (30) day month regardless of the actual number of days in the month the Closing occurs.

3.    Notwithstanding Section 8.01 of the Contract of Sale and Section 5-1311 of the New York General Obligation Law, if prior to the Closing all or a material portion of the Premises is destroyed by fire or otherwise (with damage of $50,000 or more deemed material for this purpose), Purchaser shall have the right to elect by written notice delivered within ten (10) business days after it is notified in writing by Seller of such damage to terminate the Contract of Sale. If Purchaser elects to so terminate, Purchaser's sole remedy shall be to receive a refund of the downpayment made pursuant to Section 2.05 of the Contract of Sale. If Purchaser elects to proceed with the purchase pursuant to the Contract of Sale, there shall be no reduction in the Purchase Price and the proceeds from Seller's casualty insurance that are paid out by its insurer due to such damage shall be paid to Purchaser.

4.    Except as provided in the Contract of Sale, the customs with respect to title closings recommended by the Real Estate Board of New York shall apply to the apportionments at the Closing.

5.    With respect to Section 10.13 of the Contract of Sale, Seller shall deliver to Purchaser at the Closing the files in its possession regarding the Premises and therefore shall not be required to make such files available to Purchaser after the Closing.

6.    In addition to the Permitted Exceptions, the Premises are also conveyed pursuant to any covenant, restrictions, reservations, rights of way and easements so long as they do not prohibit the continued use and maintenance of the structures on the Premises or the Title Insurer will insure against the enforcement of any restriction set forth therein.

7.    Seller represents that at the time of the Closing there shall be a fully operational single station smoke detecting alarm device in the Premises if required by law, and Seller shall deliver an affidavit at Purchaser's request pursuant to Executive Law 378(5) if required by law.

8.    Concurrently herewith, the parties shall execute the lead-based paint disclosure attached hereto.

9.    All understandings and agreements had between the parties hereto are merged in this agreement. This agreement is entered into after full investigation, without Purchaser relying upon any statement or representation, or any other matter or thing whatsoever, not embodied in this agreement. This provision shall survive the closing.

10.    The parties agree that the Closing shall involve a simultaneous, three (3)-party closing of title involving the (i) Seller and (ii) Purchaser herein, and (iii) the contract vendee of the Purchaser. The proceeds for the Purchase Price shall be paid to Seller by Purchaser's contract vendee and Seller shall cooperate with Purchaser's efforts to sell the Premises to Purchaser's contract vendee and execute any and all documents necessary in order to consummate the closing of title for the Premises from Purchaser to Purchaser's contract vendee.

11.    Supplementing Section 10.12 of the Contract of Sale, Seller shall also be liable for payment of the transfer taxes incurred on the sale of the Premises from Purchaser to

Purchaser's contract vendee. All payments of transfer taxes due under the Contract of Sale and for the transfer of the Premises from Purchaser to Purchaser's contract vendees shall be paid by Purchaser at Closing. The obligations of this paragraph shall survive the Closing.

12. Seller acknowledges receipt of $50,000.00 from Purchaser representing the Downpayment and represents that upon execution of this Contract, Seller shall transfer the Downpayment to Seller's counsel as escrow agent to be held in an separate escrow account in the manner required under Section 2.05 of the Contract of Sale.

Seller:                                          Purchaser:

211 AINSLIE STREET LLC                GURINO FAMILY PARTNERSHIP

Robert Fiducci, Member                Anthony Gurino, Partner

### Addendum to Schedule A

ALL that certain plot, piece and parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the northwesterly corner of Ainslie Street and Manhattan Avenue, formerly Ewen Street;

RUNNING THENCE easterly along the northerly side of Ainslie Street, 125 Feet;

THENCE northerly parallel with the easterly side of Manhattan Avenue, 100 feet;

THENCE westerly parallel with the northerly side of Ainslie Street, 46 feet 6 inches;

THENCE southerly parallel with the easterly side of Manhattan Avenue, 30 feet;

THENCE westerly parallel with the easterly side of Ainslie Street, 78 feet 6 inches to the easterly side of Manhattan Avenue;

THENCE southerly along the easterly side of Manhattan Avenue, 70 feet to the point or place of BEGINNING

SAID premises known as and by the street number 211 Ainslie Street and 278 Manhattan Avenue, Brooklyn, New York.



Contract of Sale for New York office, commercial and multi-family residential premises

# Contract of Sale—Office, Commercial and Multi-Family Residential Premises

## Table of Contents

Schedule A. Description of premises (to be attached)
Schedule B. Permitted exceptions
Schedule C. Purchase price
Schedule D. Miscellaneous
Schedule E. Rent schedule (to be attached)
Section 1. Sale of premises and acceptable title
Section 2. Purchase price, acceptable funds, existing mortgages, purchase money mortgage and escrow of downpayment
Section 3. The closing
Section 4. Representations and warranties of seller
Section 5. Acknowledgments of purchaser
Section 6. Seller's obligations as to leases
Section 7. Responsibility for violations

Section 8. Destruction, damage or condemnation
Section 9. Covenants of seller
Section 10. Seller's closing obligations
Section 11. Purchaser's closing obligations
Section 12. Apportionments
Section 13. Objections to title, failure of seller or purchaser to perform and
Section 14. Broker
Section 15. Notices
Section 16. Limitations on survival of representations, warranties, covenants and other obligations
Section 17. Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated the 20th day of March, 2013,

Between
**Gurino Family Partnership** *and Anthony Gurino*

Address:
82-17 153rd Avenue, Suite 206
Howard Beach, New York 11414
("Seller") and

**Ainslie Estates LLC**
Address:
162 Manhattan Avenue
Brooklyn, New York 11211
("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## Schedule A
### DESCRIPTION OF PREMISES*

The Premises are located at or known as:
Street Address:207-217 Ainslie Street
City:Brooklyn    State:New York   Zip:11211
Tax Map Designation: Section:    Block:2770    Lot:0001
*See annexed Addendum to Schedule A for a complete description of the Premises.
(☐ metes and bounds description attached hereto)

## Schedule B
### PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title unmarketable. —of record

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7.    (a)    Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises. Minor

(b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto;

## Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows:
    (a) By check subject to collection, the receipt of which is hereby acknowledged by Seller.        **$500,000.00**
    (b) By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02;        **$5,580,050.00**
    (c) By acceptance of title subject to the following Existing Mortgage(s):        **$N/A**
    (d) By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, in the sum of $N/A  payable as follows:

Interest Rate:N/A   Term:N/A   Monthly payment:N/A   Prep. Fee: N/A   Other provisions:N/A        **$N/A**
Making for a total Purchase Price of:        **$6,090,050.00**

### Schedule D
### MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):None.

2. Last date for consent by Existing Mortgage(s) (§2.03(b)):N/A

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):N/A

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):N/A

5. Seller's tax ID Nos (§2.05) #1:      #2:      #3:      #4:

6. Buyer's tax ID Nos (§2.05) #1:      #2:      #3:      #4:

7. Scheduled time and date of Closing (§3.01): Date:June 1 0 2013 TIME BEING OF THE ESSENCE Time:10:00 a.m. o'clock.

8. Place of Closing (§3.01):Balzix Daigle LLP, 592 Fifth Avenue, 4th Floor, New York, New York 10036

9. Assessed valuation of Premises (§4.10):$2,128,050.00

10. Fiscal year and annual real estate taxes on Premises (§4.10): Fiscal Year:7/01/2012-6/01/2013    Annual Taxes:

$111,617.13

11. Tax abatements or exemptions affecting Premises (§4.10):N/A

12. Assessments on Premises (§4.13):101,250.00

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):N/A

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):N/A

15. Broker, if any (§14.01):None

16. Party to pay broker's commission (§14.01):N/A
17. Address for notices (§15.01):
    If to Seller:
    Gurino Family Partnership
    82-17 153rd Avenue, Suite 206, Howard Beach, New York 11414

    with a copy to:Buyer's Attorney
    Balzix Daigle LLP
    592 Fifth Avenue, 4th Floor, New York, New York 10036

    If to Purchaser:
    Ainslie Estates LLC
    162 Manhattan Avenue, Brooklyn, New York 11249

        with a copy to:Buyer's Attorney
        Bernard Shafran, Esq.
        49 West 37th Street, 9th Floor, New York, New York 10018

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):N/A

19. Additional Schedules or Riders (§17.08):N/A

### Schedule E
### RENT SCHEDULE

(☐ If more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)

| Name | Apt. No. | Rent | Due | Security |
|------|----------|------|-----|----------|

**Section 1. Sale of Premises and Acceptable Title**

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvement situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as:
Street Address:207-217 Ainslie Street,
City: Brooklyn State: New York Zip:11211
Tax Map Designation: Section:_____ Block:2770 Lot:0001

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

**Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment**

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $6,000,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. ~~(a) If Schedule G provides for the conveyance~~ of title by Purchaser subject to one or more ~~existing mortgages~~ (collectively, "Existing Mortgage(s)"), ~~the amounts~~ specified in Schedule C with reference thereto ~~may be~~ approximate. If at the Closing the aggregate ~~principal~~ amount of the Existing Mortgage(s), ~~as evidenced by payments required from under prior to the Closing~~, is less than the aggregate amount of the ~~Existing Mortgage(s) as specified in Schedule C, the~~

~~difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.~~

~~(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contract, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent~~

~~(i) the additional consideration in cash which the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or~~

~~(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.~~

~~If Schedule G provides for a Purchase Money Mortgage (as defined in §2.04), Seller may assign this contract in the manner provided in §13.02. If any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).~~

§2.04. ~~(a) If Schedule G provides for payment of a~~ portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay any mortgage recording tax and recording fees therefor and the filing fees for any financing statements ~~delivered in connection therewith.~~

~~(b) If Schedule G provides for the acceptance of title~~ by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii) if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreement or~~

15673/2014 Verified Answer TO CROSS ... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 29 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 30 of 54 PageID #: 53

~~agreements reasonably required by the mortgagee to confirm such subordination.~~

~~(e) The Purchase Money Mortgage shall contain the following additional provisions:~~

~~(i) The mortgagor or any owner of the~~ mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagor in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], or not less ~~than 10 days notice to the holder hereof.~~

~~(ii) Notwithstanding anything to the~~ contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceeding to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this ~~mortgage or the mortgagee's rights of foreclosure.~~

~~(iii) The mortgagee, in performing its~~ obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposit held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged ~~defaults hereunder and, if so, specifying the nature thereof.~~

~~(iv) All notices required or desired to be~~ given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in ~~accordance with the provisions hereof.~~

~~(v) The additional provisions, if any, specified in Schedule __ hereto.~~

**The**

**§2.05.** If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account [or as otherwise agreed in writing by Seller, Purchaser and Escrowee] until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either as set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to

make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

**Section 3. The Closing**

**§3.01.** Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

**Section 4. Representations and Warranties of Seller**

Seller represents and warrants to Purchaser as follows:

**§4.01.** Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

**§4.02.** If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

**§4.03.** The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;

(b) no renewal or extension options have been granted to tenants;

(c) no tenant has an option to purchase the Premises;

(d) the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;

15873/2014 Verified Answer TO CROSS C... **Case 1-16-41426-nhl** Doc 15 Filed 05/20/16 Entered 05/20/16 14:59:52 Page 30 of 53

Case 1:16-cv-01924-NGG-VMS Document 1-5 Filed 04/19/16 Page 31 of 54 PageID #: 54

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Lease which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. ~~If the Premises or any part thereof are subject~~ to the New York City Rent Stabilization Law, Seller is, and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. ~~If the Premises or any part thereof are subject~~ to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. ~~If an insurance schedule is attached hereto,~~ such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, ~~if no date is set forth therein as of the date hereof.~~

§4.07. ~~If a payroll schedule is attached hereto, such~~ schedule lists all employees presently employed in the Premises, and the information contained therein is accurate as of the date set forth therein or, ~~if no date is set forth therein, as~~ of the date hereof, and except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued ~~unpaid sums owed to any employee.~~

§4.08. ~~If a schedule of service, maintenance, supply~~ and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as ~~of the date hereof.~~

§4.09. ~~If a copy of a certificate of occupancy for the~~ Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no ~~representation as to compliance with any such certificate.~~

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. ~~Except as otherwise set forth in a schedule~~ attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such ~~schedule, if any, are and on the Closing Date will be owned by~~

~~Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.~~

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:

(a) amend, renew or extend any Lease in any respect, unless required by law;

(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or

(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with

(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and

(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that

15873/2014 Verified Answer TO CROSS CLAIMS Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 31 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 32 of 54 PageID #: 55

would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchase Price or give rise to any other claim on the part of Purchaser.

## Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, ~~except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if~~

~~(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof~~

~~(b) the Building is a multiple dwelling and either~~

~~(i) such violation is rent impairing and cannot rent to be nonrecoverable under Section 302-a of the Multiple Dwelling Law, or~~

~~(ii) a proceeding has been validly~~ commenced in and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all

such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:

(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or

(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

## Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

## Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

§9.01. ~~The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part.~~ Seller shall pay or make, ~~as and when~~ due and payable, all payments of principal and interest and all deposits required to ~~be paid or made under the Existing Mortgage(s).~~

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

## Section 10. Seller's Closing Obligations

15873/2014 Verified Answer TO CROSS... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 32 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 33 of 54 PageID #: 56

At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).

Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall, reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

Section 11. Purchaser's Closing Obligations
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all property executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
(a) prepaid rents and Additional Rents (as defined in §12.03);
(b) interest on the Existing Mortgage(s);
(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;
(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;
(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;
(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g) permitted administrative charges, if any, on tenants' security deposits;

(h) dues to rent stabilization associations, if any;

(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

(a) first to the month preceding the month in which the Closing occurred;

(b) then to the month in which the Closing occurred;

(c) then to any month or months following the month in which the Closing occurred; and

(d) then to the period prior to the month preceding the month in which the Closing occurred.

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

**Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of this examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the

Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurance or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

~~**Section 14. Broker**~~

§14.01. ~~If no broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any~~

~~representations, warranties or agreements contained in their~~
paragraph. The representations ~~and obligations~~ under this
paragraph ~~shall survive the~~ Closing or, if the Closing does not
~~occur, the termination of this contract~~.

### Section 15. Notices

§15.01. All notices under this contract shall be in
writing and shall be delivered personally or shall be sent by
prepaid registered or certified mail, addressed as set forth in
Schedule D, or as Seller or Purchaser shall otherwise have
given notice as herein provided.

### Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract,
no representations, warranties, covenants or other obligations
of Seller set forth in this contract shall survive the Closing,
and no action base thereon shall be commenced after the
Closing. The representations, warranties, covenants and other
obligations of Seller set forth in §4.03, §6.01 and §6.02 shall
survive until the Limitation Date specified in Scheduled D (or
if none is so specified, the Limitation Date shall be the date
which is six months after the Closing Date), and no action
based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the
acceptance thereof by Purchaser, shall be deemed the full
performance and discharge of every obligation on the part of
Seller to be performed hereunder, except those obligations of
Seller which are expressly stated in this contract to survive the
Closing.

### Section 17. Miscellaneous Provisions

§17.01. If consent of the Existing Mortgagee(s) is
required under §2.03(b), Purchaser shall not assign this
contract or its rights hereunder without the prior written
consent of Seller. No permitted assignment of Purchaser's
rights under this contract shall be effective against Seller
unless and until an executed counterpart of the instrument of

assignment shall have been delivered to Seller and Seller shall
have been furnished with the name and address of the
assignee. The term "Purchaser" shall be deemed to include the
assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the
entire understanding between the parties with respect to the
transaction contemplated herein and all prior agreements,
understandings, representations and statements, oral or
written, are merged into this contract. Neither this contract nor
any provision hereof may be waived, modified, amended,
discharged or terminated except by an instrument signed by
the party against whom the enforcement of such waiver,
modification, amendment, discharge or termination is sought,
and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and
construed in accordance with, the law of the State of New
York.

§17.04. The captions in this contract are inserted for
convenience of reference only and in no way define, describe
or limit the scope or intent of this contract or any of the
provisions hereof.

§17.05. This contract shall be binding upon and shall
inure to the benefit of the parties hereto and their respective
heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective
until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall
include the feminine and neuter, the singular shall include the
plural and the plural shall include the singular, as the context
may require.

§17.08. If the provisions of any schedule or rider to
this contract are inconsistent with the provisions of this
contract, the provisions of such schedule or rider shall prevail.
Set forth in Schedule D is a list of any and all schedules and
riders which are attached hereto but which are not listed in the
Table of Contents.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):                                                    BUYER(S):

*SIGNATURES TO FOLLOW*

Gurino Family Partnership,                          Nalcorp Inc.
By: Anthony Gurino, Partner                      By: Anshel Friedman, President

*ON NEXT PAGE*

_____                    _____

_____                    _____

_____                    _____

Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

_____

BALTZIS DAIGLE LLP, By: Konstantinos G. Baltzis, Esq.

15873/2014 Verified Answer TO CROSS C... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 35 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5    Filed 04/19/16    Page 36 of 54 PageID #: 59

IN WITNESS WHEREOF, the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):

_____
Gurino Family Partnership,
By: Anthony Gurino, Partner

_____

_____                          _____

_____                          _____

BUYER(S):

_____
Ainslie Estates LLC
By: Amshel Friedman, President

_____

_____

_____

Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

_____
BALTZIS DAIGLE LLP, By: Konstantinos G. Baltzis, Esq.



EXHIBIT "A" w| ATTACHMENTS

## AGREEMENT

**THIS CONTRACT** (this "Agreement") is made as of June 11, 2013, by and between **AINSLIE STREET LLC, a Delaware Limited Liability Company** ("Seller"), **GURINO FAMILY PARTNERSHIP** ("Gurino") and **AINSLIE ESTATES LLC,** a New York limited liability company ("Purchaser").

## RECITALS:

**WHEREAS,** Seller and Gurino are parties to that certain Contract of Sale dated March __, 2013 (the "First Contract"), whereby Seller agreed to sell to Gurino and Gurino agreed to buy from Seller, the property known as 207-217 Ainslie Street, Brooklyn, NY (the "Property") for the purchase price of $4,500,000 ("Transaction A"); and

**WHEREAS,** Gurino and Anthony Gurino and Purchaser are parties to that certain Contract of Sale dated March 20, 2013 (the "Second Contract" and collectively with the First Contract, the "Contracts"), whereby Gurino and Anthony Gurino agreed to sell to Purchaser and Purchaser agreed to buy from Gurino and Anthony Gurino the Property for the purchase price of $6,000,000 ("Transaction B" and collectively with Transaction A, the "Transactions").

**NOW, THEREFORE,** in consideration of the covenants and promises contained herein and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the parties, intending to be legally bound, hereby agree as follows:

1.    Closing Date. The Closing Date for the Contracts is November 12, 2013. Time is of the essence as to the obligation of the parties to close on the Closing Date.

2.    The Seller, Ainslie Street LLC is erroneously referred to in the First Contract as 211 Ainslie Street LLC and 211 Ainsley Street LLC. All references to Ainslie Street LLC and 211 Ainsley Street LLC are hereby stricken and replaced with Ainslie Street LLC.  .

3.    Transfer Tax. The transfer tax due in connection with the Transactions shall be paid 75% by Seller and 25% by Gurino.

4.    Broker. The $120,000 broker fee due to Allied Realty Associates LLC ("Broker") in connection with the Transactions shall be paid 75% by Seller and 25% by Gurino. Seller and Gurino represent that they have neither engaged nor otherwise used the services of a real estate broker in connection with the Transactions except Broker, who shall be paid by Seller and Gurino as follows: (i) $60,000.00 on or before June 14, 2013; and (ii) $60,000.00 at the Closing, both such payments to be remitted pursuant to the percentages set forth in this paragraph 3. Seller and Gurino shall indemnify, defend and hold Purchaser harmless from and against all damages arising out of any breach of the foregoing representation.

5 .    Deposit. Purchaser has made a deposit under the Second Contract in the sum of $500,000 (the "First Deposit"). Purchaser shall deposit an additional $1,800,000 (the "Second Deposit and collectively with the First Deposit, the "Deposits") as set forth below. Seller shall record

-1-

a mortgage against the Property in the amount of $2,300,000 securing return of the Deposits if the Deposits are to be returned to Purchaser under the Contracts. Purchaser shall deposit a satisfaction of the mortgage with its counsel to be held in accordance with the Escrow Agreement annexed as Exhibit A. The $500,000 previously deposited with Baltzis Daigle LLP shall be disbursed as follows: $60,000 to Broker on or before June 14, 2013; $294,475 to Gurino; and the balance retained by Baltzis Daigle LLP in escrow pending closing. The additional $1,800,000 being deposited of even date shall be deposited as follows: $56,600 to Baltzis Daigle LLP to be held in escrow pending closing; the balance of $1,743,400 to Christopher Thompson as attorney for Seller to be released as directed by Seller. Notwithstanding the foregoing, $292,950 of the $1,743,400 delivered to Christopher Thompson shall not be released until such time as Seller has delivered to Purchaser an original satisfaction, in recordable form of the mechanics lien filed against the property by Dig N Pour Site Development and has been authorized to record same.

6.    Purchaser Credit. At Closing Purchaser shall receive a credit of $20,000.

7.    Assignment of Mortgage. Seller and Gurino shall request that the current mortgagee assign its mortgage to Purchaser's lender at Closing for the purpose of mortgage recording tax savings.

8.    Insurance. Seller shall cause Purchaser to be named as additional insured in Seller's casualty and liability insurance, and deliver evidence of same to Purchaser. Seller shall maintain the same insurance policies currently maintained.

9.    Income/Amortization. All income of the Property prior to closing shall be retained by Seller. Seller shall be obligated to pay all sums due under the loan (the "Loan") initially made by Commerce Bank N.A. to Seller secured by a mortgage on the Property as well as to perform all of Seller's obligations under the lease (the "Lease") between Seller and The City of New York, Department of General Services, Division of Real Estate Services ("Tenant"), dated June 21, 1996. Purchaser shall receive an additional credit at closing equal to the amount by which the principal sum of the Loan is reduced between the date hereof and closing.

10.    Assignment.    Gurino and Purchaser may each assign their rights under the Contracts and hereunder to their principals, affiliates or third-parties or to entity(ies) newly formed to take title to the Property, or as such party deems fit in order to proceed to Closing.

11.    Access.    Purchaser, and Purchaser's agents and representatives, shall have the right, from time to time, prior to the Closing Date, to enter upon the Property for the purpose of conducting inspections of the Property and generally for the reasonable ascertainment of matters relating to the Property

12.    Lease. Seller represents that the termination letter by Tenant dated October 19, 2012 has not been terminated, modified or amended and that Seller has no knowledge of Tenant not intending to comply with the terms of the Termination Letter. Seller shall not enter into or modify any agreements with Tenant, including without limitation, the Termination Letter, without the prior written consent of Purchaser.

13.     <u>Miscellaneous</u>.

(a)     For purposes of this Agreement, unless otherwise defined herein, all capitalized terms used herein shall have the meanings assigned to such terms in the Contracts.

(b)     In the event of any inconsistencies between the terms and conditions of this Agreement and the terms and conditions of the Contracts, the terms and conditions of this Agreement shall control. Except as modified pursuant hereto, no other changes or modifications to the Contracts are intended or implied and in all other respects the Contracts is hereby specifically ratified and confirmed by all parties hereto effective as of the date hereof. The Contracts and this Agreement shall be read and construed as one agreement. In the event that the Contracts are assigned (as provided in paragraph 9 above) or modified after the date of this Agreement, no such modification of the Contracts shall be deemed to in any way alter the parties' obligations under this Agreement. In the event that the Contracts are assigned to any individuals and/or entities that are not parties to this Agreement, then those third party assignees shall be deemed to be parties to this Agreement, *nunc pro tunc*.

(c)     This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns. The Contracts as modified by this Agreement may be further modified only by an agreement in writing signed between the parties hereto. The Contracts and this Agreement and any exhibits attached thereto contain the entire agreement between the Seller, Gurino and Purchaser and there are no other terms, obligations, covenants, representations, statements or conditions or otherwise of any kind or nature whatsoever between the parties.

(d)     This Agreement may be executed in two or more counterparts each of which shall deemed to be an original, but all of which taken together shall constitute one and the same instrument. When counterparts have been executed by all parties, they shall have the same effect as if the signatures to each counterpart or copy were upon the same document and copies of such documents shall be deemed valid as originals. This Agreement may be signed by facsimile or other electronic copy.

[ signature on following page ]

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound hereby, have executed this Agreement as of the date first above written.

SELLER:                                      PURCHASER:

Amsley Street LLC

By: _Clintson as Disclosed Agent_           By: _____

Name: _Christopht Thompson_                  Name: _Anshel Friedman_

Title: _Disclosed Agent_                     Title: _MR_

GURINO:

By: _____

Name: _Anthony Gurino_

Title: _Partner_

-4-



15873/2014 Verified Answer TO CROSS COMPLAINT

## BARGAIN AND SALE DEED

*THIS INDENTURE*, made as of November 27, 2013 between

**AINSLIE STREET LLC**, with an address of 451 Bell Street, West Hempstead, NY 11552, party of the first part,

**and**

**207 AINSLIE LLC**, with an address c/o Harry Einhorn, 100A Broadway, Suite 110, Brooklyn, NY 11249, party of the second part,

*WITNESSETH*, that the party of the first part, in consideration of $10.00 dollars, lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

*ALL* that lot or parcel of land, with the buildings and improvements thereon, erected, situate, lying and being in the City of New York, Borough of Brooklyn, County of Kings, and bounded and described in attached Schedule A.

*TOGETHER* with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof,

*TOGETHER* with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

*TO HAVE AND TO HOLD* the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*AND* the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

*AND* the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the costs of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

[Remainder of Page Intentionally Blank]

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

AINSLIE STREET LLC

By: _____

~~Name:~~ Robert FIDaccIA

Title: Managing Member

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 27th day of November, in the year 2013, before me, the undersigned, personally appeared Robert Fidutcia, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MICHAEL EICHLER
Notary Public State of NY
No. 01EI6037629
Qualified in Nassau County
Comm. Expires 02/18/20 15

**_Bargain and Sale Deed_**

**AINSLIE STREET LLC**

To

**207 AINSLIE LLC**

Section
Block 2770
Lot 1
County or Town Kings
Street Address 207-217 Ainslie Street, Brooklyn, New York

Return By Mail To:

Bucis Saks Esq
1732 East 12TH St
Brooklyn N.Y  11229

Reserve This Space For Use Of Recording Office

15873/2014 Verified Answer TO CROSS C... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 44 of 53

Case 1:16-cv-01924-NGG-VMS    Document 1-5   Filed 04/19/16    Page 45 of 54 PageID #: 68



## Schedule A Description

Title Number **CAK-619-13327**                                                        Page    **1**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northeasterly corner of Ainslie Street and Manhattan Avenue, formerly Ewen Street;

RUNNING THENCE Easterly along the Northerly side of Ainslie Street, 125 feet;

THENCE Northerly parallel with the Easterly side of Manhattan Avenue, 100 feet;

THENCE Westerly parallel with the Northerly side of Ainslie Street, 46 feet 6 inches;

THENCE Southerly parallel with the Easterly side of Manhattan Avenue, 30 feet;

THENCE Westerly parallel with the Northerly side of Ainslie Street, 78 feet 6 inches to the Easterly side of Manhattan Avenue;

THENCE Southerly along the Easterly side of Manhattan Avenue, 70 feet to the point or place of BEGINNING.


FOR INFORMATION ONLY:
PREMISES known as 211 Ainslie Street and 278 Manhattan Avenue, Brooklyn, New York

Ins--

**First American Title Insurance Company of New York**
**Capital Abstract Co., Inc.**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2013120200267003001EB011

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2013120200267003 | Document Date: 11-27-2013 | Preparation Date: 12-02-2013 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CAPITAL ABSTRACT CO.CAK-619-13327<br>3854 FLATLANDS AVE (HOLD PICK UP LENNY MINSKI<br>AS AGENT FOR FIRST AMERICAN TITLE INSURANCE CO.<br>BROOKLYN, NY 11234 | HOLD PICK UP LENNY<br>BORIS SAKS ESQ<br>1732 EAST 12TH STREET<br>BROOKLYN, NY 11229 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2770 | 1 | Entire Lot | 207 AINSLIE STREET |

Property Type: COMMERCIAL REAL ESTATE

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year_____ Reel_____ Page_____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| AINSLIE STREET LLC<br>451 BELL STREET<br>WEST HEMPSTEAD, NY 11552 | 207 AINSLIE LLC<br>C/O HARRY EINHORN, 100A BROADWAY, SUITE 110<br>BROOKLYN, NY 11249 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 118,125.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 18,000.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     12-09-2013 10:54
City Register File No.(CRFN):
**2013000504515**

*City Register Official Signature*

15073/2014 Verified Answer TO CROSS COMPL... Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 46 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5 .  Filed 04/19/16   Page 47 of 54 PageID #: 70



15873/2014 Verified Answer TO CROSS claim Case 1-16-41426-nhl   Doc 15   Filed 05/20/16   Entered 05/20/16 14:59:52   Page 48 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5   Filed 04/19/16   Page 49 of 54 PageID #: 72

## ASSIGNMENT OF CONTRACT OF SALE

This Assignment made this 27th day of November, 2013 by **AINSLIE ESTATES LLC** ("Assignor") and **207 AINSLIE LLC** ("Assignee").

## W I T N E S S E T H:

**WHEREAS,** Gurino Family Partnership and Anthony Gurino ("Seller") and Assignor are parties to that certain Contract made as of March 20, 2013 (the "PSA"), whereby Seller agreed to sell to Purchaser and Purchaser agreed to buy from Seller the property located at 207-217 Ainslie Street, Brooklyn, New York; and

**WHEREAS,** Assignor wishes to assign to Assignee all of its right, title and interest in and to the Contract.

**NOW THEREFORE,** in consideration of the mutual covenants contained herein, receipt and sufficiency of which is hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    Assignor hereby assigns to Assignee all of its right, title and interest in and to the Contract.

2.    Assignee hereby assumes all obligations of Assignor under the Contract on and after the date hereof.

3.    This Assignment may be executed in counterparts each of which when executed and taken together shall constitute an original. The exchange of counterparts of this Assignment among the parties by means of facsimile or electronic transmission which shall contain authentic reproductions shall constitute a valid exchange of this Assignment and shall be binding upon the parties hereto.

signatures on following page

signature page to Assignment of Contract of Sale

**IN WITNESS WHEREOF,** the parties have set their hands as of the day and year above first written.

**AINSLIE ESTATES LLC**

By: _____

**207 AINSLIE LLC**

By: _____

Index No. 15873/2014
AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK )
                ) ss.:
COUNTY OF NASSAU )

SCOTT SPIRO being duly sworn, deposes and says:

I am not a party to this action, I am over 18 years of age and reside in the County of Nassau, State of New York.

On the 16th day of July, 2015, I served the within **VERIFIED ANSWER TO CROSS-CLAIMS OF CO-DEFENDANT CITY OF NEW YORK on:**

Marc Aronson
Attorney for Plaintiff
107 Smith Street
Brooklyn, NY 11201
718-237-1960

Zachary Carter, Esq.
Of Counsel, Todd Krichmar, Esq.
Corp. Counsel of the City of New York
Attorneys for Defendant City of New York
100 Church Street
New York, NY 10007
212-356-2537

Martin Needleman, Esq
Project Director & Chief Counsel
Brooklyn Legal Services Corporation A
Shriver Tyler McCrate Center for Justice
260 Broadway - Second Floor
Brooklyn, NY 11211
718-487-2322

Christopher Thompson, Esq.
Attorney for Defendant, Ainslie Street, LLC
33 Davison Lane East
West Islip, NY 11795
631-983-8830

by Federal Express Priority Overnight Delivery to the above address which was deposited into the care and custody of Federal Express by depositing same in an official depository of Federal Express. All of the fees were paid by the sender;

SCOTT SPIRO

15673/2014 Verified Answer TO CROSS CLAIMS Case 1-16-41426-nhl    Doc 15    Filed 05/20/16    Entered 05/20/16 14:59:52    Page 51 of 53

Case 1:16-cv-01924-NGG-VMS   Document 1-5   Filed 04/19/16   Page 52 of 54 PageID #: 75

STATE OF NEW YORK, COUNTY OF NASSAU, ss.

On the 16th day of July, 2015, before me, the undersigned notary public, personally appeared SCOTT SPIRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Sworn To Before Me this

July 16, 2015

Notary Public
My commission expires on

MICHELLE DELIA
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY
LIC. #01DE4966453
COMM. EXP. 05/07/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X
CONSELYEA STREET BLOCK ASSOCIATION, INC.,          Index Number 15873/2014
                                    Plaintiff,

                                                        VERIFIED ANSWER TO
                                                        CROSS-CLAIMS OF
                                                        CO-DEFENDANT CITY OF NEW
                                                        YORK

            -against-


207 AINSLIE, LLC
THE CITY OF NEW YORK
AINSLIE STREET, LLC,
                                    Defendants.
-------------------------------------------------------------------X

## ANSWER TO CROSS-CLAIMS

SIDRANE & SCHWARTZ-SIDRANE, LLP
Attorneys for DEFENDANT
207 Ainslie, LLC
119 No. Park Avenue, Suite 201
Rockville Centre, New York 11570
(516) 569-9539

To:

Attorney(s) for Petitioner

Service of a copy of the within                    is hereby admitted

Dated,

                                    _____

                                    Attorney(s) for


Certified Pursuant to Court Rule 22 NYCRR 130.1-1

_____

INSYNC LITIGATION SUPPORT

:JUL 21 2015

ORIGINAL

JS 44 (Rev. 11/12)    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Conselyea Street Block Association, Inc.

**DEFENDANTS**
207 Ainslie, LLC, The City of New York and Ainslie Street LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brooklyn Legal Services Corp.
260 Broadway, Suite 2
Brooklyn, NY 11211

Attorneys *(If Known)*
Goldberg Weprin Finkel Goldstein LLP (for 207 Ainslie, LLC)
1501 Broadway, 22nd Floor
New York, NY 10036

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability / Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act / ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1334, 1446, 1452 and Federal Rule of Bankruptcy Procedure 9027
Brief description of cause:
Competing claims asserting right of first refusal

**VII. REQUESTED IN**
**COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

**VIII. RELATED CASE(S)**
**IF ANY**
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
04/19/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _Kevin J. Nash_____, counsel for _207 Ainslie, LLC_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐        monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐        the complaint seeks injunctive relief,

☒        the matter is otherwise ineligible for the following reason
         This is a removal action for automatic referral to the Bankruptcy Court.
         **DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1**

         Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)     Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: No_____

2.)     If you answered "no" above:
        a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? No_____

        b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? Yes_____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____
        (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
        ☒      Yes                              ☐      No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
        ☐      Yes      (If yes, please explain)      ☒      No

I certify the accuracy of all information provided above.

Signature:_____